IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
DEC 27 2006
U.S. COURT OF FEDERAL CLAIMS

ROUND VALLEY INDIAN TRIBES, a federally recognized Indian tribe,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

NO. 06-900 L

**COMPLAINT**

Plaintiff, by and through its undersigned attorneys, hereby alleges as follows:

**NATURE OF ACTION**

1. This is an action by Plaintiff, the Round Valley Indian Tribes ("Plaintiff", the "Round Valley Tribe", or the "Tribe") seeking money damages against Defendant United States of America ("Defendant" or the "United States") for breaches of trust duties in regard to the management by Defendant of the trust funds of the Round Valley Tribe from 1855 to present. This action arises out of Defendant's breach of Constitutional, statutory, regulatory, and common law trust duties owed to the Tribe.

**PARTIES**

2. The Round Valley Indian Tribes, formerly known as the Covelo Indian Community, is a sovereign Indian tribe and is recognized as such by the United States. Plaintiff possesses all legal rights and responsibilities afforded to federally recognized Indian tribes, and



1945301.2

is eligible for the special programs and services provided by United States to federally recognized Indian tribes.

3. Defendant, the United States, is a trustee of funds that it holds on behalf of the Round Valley Tribe. The Defendant is vested with numerous trust and fiduciary responsibilities in connection with the management and administration of the Tribe's trust funds. Defendant employs various federal departments and agencies to fulfill those obligations. These federal departments and agencies include the Department of the Interior ("Interior"), the Department of Treasury ("Treasury"), the Bureau of Indian Affairs ("BIA"), the Office of Trust Funds Management, and the Office of Special Trustee for American Indians. The Special Trustee is appointed by the Secretary of the Interior ("Secretary") and charged with certain duties and responsibilities under the American Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 4001-4061, legislation enacted by Congress that recognizes the critical importance of proper management of trust funds to Native Americans.

**JURISDICTION**

4. This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1505 (the Indian Tucker Act) and § 1491(a)(1) (the Tucker Act) in that the action involves a claim against the United States for money damages brought by an Indian tribe residing within the territorial limits of the United States, and arises under the Constitution, laws, or regulations of the United States or Executive Orders of the President, including, but not limited to:

4.1. Federal laws, Executive Orders and Secretarial Orders that establish, enlarge and otherwise affect the Round Valley Indian Reservation and the Tribe's trust fund that

include, but are not limited to: an 1856 or 1858 Secretarial Order, Executive Order of November 18, 1858; Act of April 8, 1864, 13 Stat. 39; Executive Order of March 30, 1870; Act of March 3, 1873, 17 Stat. 633; Executive Order of April 8, 1873; Executive Order of May 15, 1875; Executive Order of July 26, 1876; Act of October 1, 1890, 26 Stat. 658; Act of February 2, 1905, 33 Stat. 706; Act of May 24, 1924, 42 Stat. 138; and Secretarial Order of February 11, 1947.

4.2. Indian Reorganization Act of 1934, 25 U.S.C. § 476;

4.3. The Act of December 22, 1987, Pub. L. No. 100-202 and the Act of September 27, 1988, Pub. L. No. 100-446, which require the BIA to audit and reconcile tribal trust funds, and to provide tribes with an accounting of such funds.

4.4. The Act of October 23, 1989, Pub. L. No. 101-121, the Act of November 5, 1990, Pub. L. No. 101-512, and the Act of November 13, 1991, Pub. L. No. 102-154, all of which require the BIA to audit, reconcile, and certify through an independent party the results of the reconciliation of tribal trust funds as the most complete reconciliation of such funds possible, and to provide tribes with an accounting of such funds.

4.5. 25 U.S.C. § 117a, 117b, 117c, 118, 122, 161, 161b, 161d, all of which pertain generally to trust funds and obligations of the Defendant with respect to those funds;

4.6. The Act of October 25, 1994 (The American Indian Trust Fund Management Reform Act of 1994), Pub. L. No. 103-412, codified at 25 U.S.C. §§ 161a, § 162a, and §§ 4001-4061 (1997), pertinent sections of which require:

4.6.1. Section 101: charges the Secretary with a duty to provide periodic, timely reconciliations of tribal trust funds to assure the accuracy of accounts, and to determine accurate cash balances of tribal trust funds.

4.6.2. Section 102(c): requires the Secretary to cause an annual audit of all tribal trust funds to be conducted.

4.6.3. Sections 301 and 302: appoints a Special Trustee for American Indians to provide for more effective management of, and accountability for, the proper discharge of trust responsibilities to Indian tribes, and to oversee and coordinate reforms within the Interior of practices relating to the management and discharge of such responsibilities.

4.6.4. Section 303(b)(2)(A): charges the Special Trustee with a duty to monitor the reconciliation of trust accounts to ensure that the BIA provides account holders with a fair and accurate accounting of all trust funds.

4.6.5. Section 303(d): charges the Special Trustee with a duty to provide such guidance as necessary to assist Interior personnel in identifying problems and options for resolving problems.

4.6.6. Section 304(2)(A) and (B): charges the Secretary with a duty to provide a report to Congress that, among other things, identifies for each tribal trust fund a balance reconciled as of September 30, 1995, and an attestation by each tribe that the Secretary has provided the account holder with as full and complete an accounting as possible and that the tribe accepts the balance as reconciled by the Secretary, or that the tribe disputes the balance as reconciled, and if so, the report must explain why the tribe disputes the Secretary's balance.

4.6.7. Section 304(3): charges the Secretary with a duty to provide a statement that outlines the efforts that the Secretary will undertake to resolve the tribe's dispute.

4.7. Other statutes that generally and specifically describe the United States' duties as a fiduciary in managing Plaintiff's trust funds, including but not limited to: 25 U.S.C.

§§ 111-148 (Disbursements of Moneys and Supplies); 25 U.S.C. §§ 151-166 (Deposit, Care and Investment of Indian Moneys); and selected statutes of Title 31 of the United States Code.

4.8. Other statutes that generally and specifically describe the United States' duties in managing Plaintiffs timber, land, and other trust assets: selected statutes of Title 25 of the United States Code including, but not limited to: Chapter 12 (Lease, Sale, or Surrender of Allotted or Unallotted Lands), including 25 U.S.C. § 410, § 415, §§ 415b-415d; Chapter 8 (Rights-of-Ways Through Indian Reservations), including 25 U.S.C. § 325; and timber-related statutes, including 25 U.S.C. § 196, § 399, § 407, § 407d, § 413, and §§ 3101-3120 (National Indian Forest Resources Management Act).

4.9. Regulations that generally and specifically describe the United States' duties in managing Plaintiff's trust funds, including but not limited to: 25 C.F.R. Part 87 (Use or Distribution of Indian Judgment Funds); 25 C.F.R. Chap. I, Bureau of Indian Affairs, Department of Interior, Subchapter G--Financial Activities; 25 C.F.R. Part 115 (Trust Funds for Tribes and Individual Indians); 25 C.F.R. Part 1200 (American Indian Trust Fund Management Reform Act); and selected United States Treasury ("Treasury") regulations.

4.10. Regulations that generally and specifically describe the United States' duties in managing Plaintiff's timber, lands and other trust assets, including but not limited to: 25 C.F.R. Parts 162 (Leases and Permits), 163 (General Forestry Regulations), and 169 (Rights-of-way Over Indian Lands); and other selected regulations promulgated by various United States agencies; and

4.11. Written policies, manuals and executive orders published by various United States departments and agencies that generally and specifically describe the United States' duties in managing Plaintiff's trust funds, timber and other trust assets.

5. To protect the rights of tribes until accounting of their trust funds could be completed, Congress provided, in each Interior Appropriations Act since 1990, that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. No. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. No. 104-134, 110 Stat. 1341; Act of September 30, 1996, Pub. L. No. 104-208, 110 Stat. 3009; Act of November 14, 1997, Pub. L. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. No. 105-277, 112 Stat. 2681; Act of November 29, 1999, Pub. L. No. 106-113, 113 Stat. 1501; Act of October 11, 2000, Pub. L. No. 106-291, 114 Stat. 992; and Act of November 5, 2001, Pub. L. No. 107-63.

6. This Court also has jurisdiction over the subject matter of this action under a well-developed body of federal common law that describes and defines the fiduciary relationship between the United States and Plaintiff.

7. Venue lies in this Court pursuant to 28 U.S.C. § 1505 and § 1491.

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

8. The Round Valley was originally set aside for Indian purposes by the Department of the Interior in 1856. On March 30, 1870, pursuant to the Four Reservations Act of 1864, 13 Stat. 39, President Grant established the Round Valley Indian Reservation by Executive Order. The Reservation has been enlarged, and otherwise affected by various laws and Executive and Secretarial Orders, including those described in Paragraph 4.1 herein.

9. The Tribe is the beneficial owner of certain parcels of land within the Reservation, title to which is held in trust by the United States for the benefit of the Tribe.

10. Land held in trust by the United States for the benefit of an Indian tribe is inalienable except as authorized by Congress, 25 U.S.C. § 177, which has granted the Secretary authority to approve conveyances of interests in trust land, such as leases, easements, and rights-of-way. The law further establishes the terms and conditions under which such conveyances may be made; generally requires that compensation be paid to the tribe for the use of tribal lands; and requires that the Secretary exercise comprehensive regulatory control over the management of lands held in trust for Indian tribes, including those lands held in trust for the Tribe.

11. The lands held in trust for the Tribe include forestlands, riverbeds, lands suitable for grazing, farming, mining, recreational, and residential purposes, and lands potentially valuable for power production; and contain a variety of valuable natural resource trust assets, including power production resources, timber, plants, surface and ground water, fish, wildlife, rock, sand, gravel and minerals.

12. The lands held in trust for the Tribe and the natural resource assets contained within and on the land are of enormous economic importance to the Tribe.

13. Pursuant to the duties and authority delegated by Congress, Interior exercises comprehensive control over the Tribe's trust funds. For over one hundred years, Congress has charged the Secretary with the duty as a trustee to collect monetary judgments paid to the Tribe and income derived from the Tribe's trust assets and to deposit such funds in the United States Treasury and other depository institutions for the benefit of the Tribe; and to require that interest be paid on the Tribe's funds held in trust and that such trust funds be invested.

14. Because the United States holds tribal land in trust, it has assumed the obligations of a trustee. *United States v. Mitchell*, 463 U.S. 206, 225 (1983); *Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001). As trustee, the United States has a fiduciary relationship and obligations of the highest responsibility and trust to administer the trust with the greatest skill and care possessed by the trustee. The United States has a fiduciary duty to the Tribe to meet "the most exacting fiduciary standards" in managing the Tribe's land and mineral estate and trust funds. *Navajo Tribe of Indians v. United States*, 176 Ct. Cl. 502, 507 (1966).

15. The trust obligations of the United States include, among other duties, the duty to ensure that tribal trust property and trust funds are protected, preserved and managed so as to produce a maximum return to the tribal owner consistent with the trust character of the property.

16. The trust obligations of the United States include, among other duties, the duty to obtain monetary benefits from the land and its resources; to enter into fair and reasonable contracts; to collect amounts duly owed for use of the trust property; to timely credit income to the proper trust accounts; to assess and collect applicable penalties and fees against users of trust property; to pay interest on trust funds held in the United States Treasury; to refrain from making improper expenditures of trust property; to prudently invest trust funds; to maintain adequate

records with respect to the trust property; to maintain adequate systems and controls to guard against error or dishonesty; to provide regular and accurate accounts to the trust beneficiaries; and to refrain from self-dealing or benefiting from the management of the trust property.

17. Defendant has, during the time period encompassed by this action, exercised comprehensive statutory and regulatory control and management over the Tribe's monetary assets; has approved leases, easements, and other conveyances of interests in trust lands of the Tribe; has assumed responsibility for collecting, depositing, and investing income generated by the Tribe's trust lands; has managed the Tribe's forestlands and timber sales; and has controlled, conducted and managed the collection, deposit, investment, and disbursement of the income derived from the Tribe's trust assets, including, but not limited to, funds derived from land leases, tideland leases, and timber sales.

18. The wrongs committed by Defendant as trustee in the mismanagement of the land and the Tribe's trust funds were and continue to be inherently unknowable to the Tribe. Due diligence by the Tribe would not have prompted discovery of these wrongs.

19. Defendant controls all of the books and records of account concerning Plaintiff's trust funds and trust property. Defendant, however, has never rendered an audit or accounting to Plaintiff for Plaintiff's trust monies; has failed to maintain or produce to the Tribe source documents and other key documents relating to the Tribe's trust funds; and has failed to establish any effective system or provision for regular or periodic accounting for the trust property and funds. As a consequence, Defendant has kept and continue to keep Plaintiff, as the trust beneficiary, uninformed as to the status of trust funds/property under Defendant's control and



1945301.2

management, the income the trust property has produced, and the disposition that has been made of the income.

20. As found by the United States Inspector General for the Department of the Interior, the United States General Accounting Office, and the Congress, among others, there are massive and long-standing problems with Defendant's administration of Indian trust funds. After a series of oversight hearings on Interior's management of Indian trust funds, Congress issued a report condemning those practices. *Misplaced Trust, Bureau of Indian Affairs Mismanagement of the Indian Trust Fund*, H.R. Rpt. No. 102-499 (1992).

21. Congress found:

> Scores of reports over the years by the Interior Department's Inspector General, the U.S. General Accounting Office, the Office of Management and Budget, have documented significant, habitual problems in BIA's ability to fully and accurately account for trust fund moneys, to properly discharge its fiduciary responsibilities, and to prudently manage the trust funds. [*Id.* at 2] . . .
>
> The [BIA] has repeatedly ignored directives to undertake needed management reform measures. [*Id.* at 3] . . .
>
> As a result of this dismal history of inaction and incompetence, there is no assurance that the [BIA] actually desires to, or will, make any substantial advancement toward rectifying the basic financial management failures brought to their attention. Despite a decade of incentives, the [BIA's] headquarters leadership and accountability continue to be woefully inadequate . . . .
>
> It is apparent that top Interior Department officials have utterly failed to grasp the human impact of its financial management of the Indian trust fund. The Indian trust fund is more than balance sheets and accounting procedures. These moneys are crucial to the daily operations of Native American tribes and a source of income to tens of thousands of Native Americans. [*Id.* at 5].
>
> Congress further found the Defendant's administration of Indian trust funds to be:
>
> Grossly inadequate in numerous important respects. The [BIA] has failed to accurately account for trust fund moneys. Indeed, it cannot even provide account holders with meaningful periodic statements on their balances. It cannot consistently and prudently

> invest trust funds and pay interest to account holders. It does not have consistent written policies or procedures that cover all of its trust fund accounting practices. Under the management of the [BIA], the Indian trust fund is equivalent to a bank that doesn't know how much money it has. [*Id.* at 56.]

22. Upon information and belief, Defendant's mismanagement of trust funds has resulted in losses to Plaintiff, a trust beneficiary. However, the extent of such losses is unknown to Plaintiff because Defendant has failed to provide Plaintiff with an accounting of its trust funds, and further has failed to maintain accurate books and records of account, lost and destroyed relevant trust account records, failed or refused to disclose known losses to the trust beneficiaries, and failed or refused to reimburse trust beneficiaries for losses to their trust funds. *See, e.g., Misplaced Trust*, H.R. Rpt. No. 102-499 at 37-41.

23. In the early 1990s, Interior entered into a contract with the Arthur Andersen accounting firm under which Arthur Andersen was to provide a reconciliation of certain tribal trust fund accounts.

24. On or about 1995, a report prepared by Arthur Andersen was delivered to Plaintiff. This report (the "Andersen Report") attempted to provide an accounting for Plaintiff's trust funds held by the Interior and/or the BIA from 1972 through 1992.

25. The Andersen Report delivered to Plaintiff expressly states that the work done does "not constitute an audit made in accordance with generally accepted auditing standards."

26. The Andersen Report was not certified by an independent party as required by the Acts of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; and November 3, 1991, Pub. L. No. 102-154, 105 Stat. 990, described above.

27. The General Accounting Office, among others, has criticized the Andersen Report. *See, e.g.*, United States General Accounting Office, *Report to Senate Committee on Indian Affairs, Tribal Reconciliation Results*, GAO Report No. B-266127 (May 3, 1996).

28. The Andersen Report does not reflect a reliable, accurate, full, and/or complete accounting of Plaintiff's trust funds for reasons that include but are not limited to:

28.1. It was not conducted pursuant to generally accepted accounting principles, but rather pursuant to procedures defined by the BIA, which imposed limitations on the scope of the work and made changes in methodologies over the course of the project that were not disclosed to the Tribe;

28.2. It was premised on the erroneous assumption that an accounting of trust funds could be done based on review of information recorded in the BIA's accounting system, without determining whether all receipts or income due had been collected and properly recorded by the BIA, and therefore by failed to address the possibility that materially significant transactions were not recorded by the BIA or that the information as recorded by the BIA was inaccurate or in error;

28.3. It failed to disclose adjustments that were recommended by Arthur Andersen but which the BIA did not accept;

28.4. It excluded from the reconciliation award accounts with multiple tribal beneficiaries;

28.5. It failed to apply reconciliation procedures to transactions if source documentation was not provided;

28.6. It failed to verify recorded disbursements to canceled checks;

28.7. It limited reconciliation procedures to testing transactions recorded, i.e., "posted" in Interior's books and ledgers;

28.8. It tested investment transactions only if "posted" to Interior's books and ledgers during the period between 1986 and 1991, and then discontinued such testing and applied "alternative procedures";

28.9. It failed to examine the investment instruments purchased, including maturities and yields,

28.10. It only tested a small percentage of investment transactions.

28.11. It failed to test investment transactions prior to 1978;

28.12. It reviewed investment transaction account detail only under improperly limited circumstances;

28.13. It did not verify the various investment vehicles owned by the Tribe;

28.14. It failed to assess whether or not the Tribe's trust funds were properly invested in accordance with statutes, regulations, and other applicable principles;

28.15. It made significant assumptions regarding the regularity of interest earned on the Tribe's cash balance;

28.16. It disregarded true deposit lags – i.e., the failure to timely record receipts in Interior's books and ledgers; and

28.17. It failed to address many transactions where accounting records and source documents could not be located; and

28.18. It only analyzes records from 1972 forward.

*See, e.g.*, United States General Accounting Office, *Report to Senate Committee on Indian Affairs, Tribal Reconciliation Results*, GAO Report No. B-266127 (May 3, 1996); Arthur Anderson LLP, *U.S. Department of the Interior, Bureau of Indian Affairs, Tribal Trust Funds Reconciliation Project: Agreed Upon Procedures and Findings Report for Round Valley Indian Tribes: July 1, 1972 Through September 30, 1992.*

29. Defendant asked the Tribe whether it accepted the findings of the Andersen Report as a full and complete accounting, and whether the Tribe accepted the balances of its trust funds, as reflected in the Andersen Report. The Tribe did not accept the Andersen Report.

30. To date, Defendant has failed to provide Plaintiff with an accounting of Plaintiff's trust funds.

**CLAIM FOR RELIEF**

**(Breach of Trust Duty-- Trust Funds Mismanagement)**

31. The Defendant has violated its trust duty to Plaintiff with regard to Defendant's management of the Tribe's trust funds in ways that include, but are not limited to:

31.1. failing to credit the Tribe's trust fund account for the total amount of income derived from the sale or lease of non-monetary trust assets, or otherwise derived from the management of the Tribe's trust assets under Defendant's management and control;

31.2. failing to collect funds due and owing to the Tribe for the sale or lease of its non-monetary trust assets, or otherwise derived from the management of the Tribe's trust assets;

31.3. failing to timely collect funds due and owing to the Tribe for the sale or lease of non-monetary trust assets, or otherwise derived from the management of the Tribe's trust assets; and

31.4. failing to credit the Tribe's trust fund account for amounts paid to it or due to it from other sources;

31.5. failing to properly record all transactions pertaining to the Tribe's trust fund account;

31.6. failing to assess and collect penalties and fees for delinquent payments or other violations;

31.7. failing to implement effective cash management practices;

31.8. failing to deposit the Tribe's trust funds in interest bearing accounts;

31.9. failing to deposit the Tribe's trust funds in interest bearing accounts in a timely manner;

31.10. holding the Tribe's trust funds in its treasury at inadequate interest rates;

31.11. holding the Tribe's trust funds in various investments paying inadequate interest rates;

31.12. utilizing the Tribe's trust funds for purposes not for the exclusive benefit of the Tribe;

31.13. otherwise failing to invest and manage the Tribe's trust funds as a prudent trustee to earn the maximum income for the Tribe;

31.14. applying the Tribe's trust funds in a manner not authorized by treaty or by express provisions of law;

31.15. expending the Tribe's trust funds in an manner that did not exclusively benefit the Tribe;

31.16. maintaining and operating a tribal trust fund system that is inadequate to properly and effectively manage tribal trust funds, and utilizing this system to manage the Tribe's trust funds;

31.17. failing to maintain adequate systems and controls in the tribal trust fund system to guard against error and dishonesty;

31.18. failing to maintain adequate records with regard to tribal trust funds, and failing to properly store tribal trust account documents so that an effective audit and reconciliation can be performed;

31.19. failing to perform regular and accurate accountings of tribal trust funds and assets for the trust beneficiary, the Tribe;

31.20. providing the Tribe with a wholly inadequate Anderson Report; and

31.21. *de facto* forcing the Tribe to employ at its own expense accounting and other experts to assist the Tribe in determining the extent of mismanaged trust funds.

32. As a result of Defendant's breaches of its trust duties with regard to the Tribe's trust funds, Plaintiff has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Round Valley Indian Tribes prays for a judgment in its favor and against Defendant as follows:

1. An Order directing Defendant to prepare a full and complete accounting, reconciliation, and certification of the Tribe's trust funds;

2. Monetary damages in Plaintiff's favor and against Defendant in an amount to be determined at trial based upon a full and complete accounting of the Tribe's trust funds;

3. Injunctive relief, to the extent allowed by this Court's authority, requiring Defendant to fulfill its trust duties with regard to the Tribe's trust funds;

4. An award of pre- and post-judgment interest, costs, and attorney's fees and expenses in this litigation as may be provided by law, including, without limitation, costs, fees and expenses (including expenses of attorneys) under the Equal Access to Justice Act, 28 U.S.C. § 2412, and under general principles of law and equity, and the fees and costs of expert assistance; and

5. For such other relief as the Court deems equitable and just.

DATED this 26th day of December, 2006.

James M. Thomas
James M. Thomas, Attorney of Record
Sharon I. Haensly (Of Counsel) (application pending)
Gabriel S. Galanda (Of Counsel)
Debora G. Juarez (Of Counsel)
WILLIAMS, KASTNER & GIBBS, PLLC
601 Union St., #4100
Seattle, WA 98101
TEL: (206) 628-6600
FAX: (206) 628-6611
jthomas@wkg.com
Attorneys for Plaintiff
Round Valley Indian Tribes