IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROUND VALLEY INDIAN TRIBES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 06-cv-00900L<br>Judge Susan G. Braden |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to Appendix A of the Rules of the Court of Federal Claims (RCFC), Plaintiff Round Valley Indian Tribes (Plaintiff or Tribe) and Defendant United States of America (Defendant or United States), through the undersigned counsel, hereby submit this Joint Preliminary Status Report (JPSR) to the Court.

## I. PLAINTIFF'S INTRODUCTORY STATEMENT

On December 27, 2006, Plaintiff filed this case against the United States under the Tucker Act, 18 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505. Docket No. (Dkt. No.) 1.

Plaintiff alleges claims for breach of fiduciary duty by Defendant in its administration of Plaintiff's trust funds, and seeks a proper accounting, reconcilation and certification of the Tribe's trust funds; monetary damages; pre- and post-judgment interest; costs; fees and expenses of experts and attorneys; and any other relief that this Court deems equitable and just. Plaintiff seeks to litigate its trust fund mismanagement claims in phases, with Phase 1 covering its mismanagement claims for the time period of Fiscal Years (FYs) 1973-present.

## II. DEFENDANT'S INTRODUCTORY STATEMENT

On December 27, 2007, Plaintiff filed this case against the United States under the Tucker Act, 18 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505. Docket No. (Dkt. No.) 1.

Plaintiff alleges broad claims for breach of fiduciary duty by Defendant in its administration of Plaintiff's trust funds and seeks compensatory or monetary damages. Id.

As set forth, in relevant part, in its Answer filed in this case on September 10, 2007, Dkt. No. 10, and as discussed in greater detail below, Defendant asserts various jurisdictional defenses that bar all or some of Plaintiff's claims in this litigation. Defendant's assertion of the jurisdictional defenses, however, must await Plaintiff's detailed specification of its claims and the factual and legal bases for those claims. Once Plaintiff's claims have been clearly defined and delineated, Defendant intends to raise other jurisdictional defenses, if warranted, including the applicable statute of limitations, the failure to state money-mandating claims, res judicata, and the exclusive jurisdiction of the Indian Claims Commission Act. Defendant proposes to apply this approach to the phased case development and trial strategy being contemplated by Plaintiff herein.

To the extent that the Court has jurisdiction over any of Plaintiff's claims herein, Defendant believes that those claims would be resolved by dispositive motions or trial. Defendant proposes that the scheduling of any additional fact discovery, expert witness discovery, and pre-trial and trial dates await the Court's ruling on the threshold jurisdictional issues.

## III. PARTIES' REPORT PURSUANT TO RCFC APPENDIX A

Pursuant to the requirements of RCFC Appendix A, counsel for the parties conducted the early meeting of counsel on August 24, 2007, August 27, 2007 and September 25, 2007, by telephone conference call. The following attorneys attended the meeting:

1. Counsel for Plaintiff: Sharon Haensly
2. Counsel of Record for Defendant: Robert W. Rodrigues
3. Other Government Counsel: Carol L. Draper, Anthony P. Hoang, Jason Bruno,

United States Department of Justice; Teresa E. Dawson, Office of the Chief Counsel, Financial Management Service, United States Department of Treasury; Michael Bianco, Elisabeth C. Brandon, Office of the Solicitor, United States Department of Interior.

Counsel for the parties discussed their positions on the several items set forth in RCFC Appendix A.

**A. Does the Court have jurisdiction over the action?**

Plaintiff's Position:

This Court has jurisdiction over this case under 28 U.S.C. § 1491 (the Tucker Act) and 28 U.S.C. § 1505 (the Indian Tucker Act).

Plaintiff seeks to litigate its claims in phases, for the purpose of manageability. Plaintiff proposes a Phase 1 that covers its trust fund mismanagement claims during the time period of FYs 1973-present. This the period of time includes the 1972-1992 time period that was covered by reports on tribal trust fund accounts produced by the accounting firm of Arthur Andersen, LLP, under contract with the Bureau of Indian Affairs. Plaintiff will seek to engage in complete discovery and litigate or settle all Phase 1 claims before proceeding to the next phase. Since this Court and other courts have decided most if not all of the Phase 1 jurisdictional issues, it is highly unlikely that Defendant's jurisdictional or res judicata defenses will result in dismissal of Plaintiff's Phase 1 claims.

Defendant's Position:

Defendant does not object to Plaintiff's proposal to litigate its trust fund mismanagement claims in phases and to dedicate Phase 1 of this case to Plaintiff's trust fund mismanagement claims for the FYs 1973-present.

The claims raised by Plaintiff in this case suffer from several possible jurisdictional deficiencies that, when addressed by this Court, will (a) result in a dismissal of the Complaint and dispose of the case in the entirety, or (b) dispose or limit the scope of certain of the claims. As noted above, Plaintiffs' claims may be barred by application of the statute of limitations at 28 U.S.C. 8§ 2501. Further, the Court may lack jurisdiction under the Tucker Act and Indian Tucker Act, 28 U.S.C. §§ 1491(a)(1), 1505, over those claims for which Plaintiff is unable to identify a substantive source of law—such as a statute, treaty, or regulation—that establishes a specific fiduciary money-mandating duty or that was within the exclusive jurisdiction of the Indian Claims Commission. Additionally, depending on Plaintiff's detailed specification of its claims, Defendant may raise the defense of claim preclusion. Before Defendant can determine which, if any, of Plaintiff's claims are time-barred, lack jurisdictional basis, or are precluded by res judicata and, based on that determination, file an appropriate dispositive motion, however, Defendant requires a detailed specification by Plaintiff of its claims, as well as the factual and legal bases thereof, in this case and, if necessary, limited discovery from Plaintiff regarding the factual bases of the claims that it asserts herein.

**B. Should the case be consolidated with any other case and, if so, why?**

The parties do not believe this case should be consolidated with any other case at this time.

**C. Should the trial of liability and damages be bifurcated, and if so, why?**

Plaintiff's Position:

Trial of liability and damages should not be bifurcated. Plaintiff believes at this time that most, if not all, Liability issues can be decided on summary judgment, since this Court and other federal courts have previously ruled on these issues.

For purposes of manageability, however, Plaintiff seeks to divide this case into phases by periods of years, whereby each period proceeds through to trial or settlement before beginning the next phase. As noted above, Phase 1 covers the FYs 1973-present.

Defendant's Position:

To the extent that the case is not disposed of in the entirety on jurisdictional grounds and that a trial in the case is necessary, Defendant believes that it would be appropriate to bifurcate the trial into liability and damages phases, because of the potential legal and factual complexity of the trust fund mismanagement issues and claims raised herein.

**D. Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal and, if so, why?**

The parties are unaware of another case before this Court or any other tribunal or any circumstance that would warrant deferral of further proceedings in this case.

**E. In cases other than tax refund actions, will a remand or suspension be sought and, if so, why and for how long?**

Plaintiff's Position:

Plaintiff envisions that a suspension may be necessary in order to conduct non-ADR settlement negotiations.

Defendant's Position:

Defendant is presently unaware of any case or circumstance that would warrant a remand or a suspension in this case.

**F. Will additional parties be joined? If so, the parties shall provide a statement describing such parties, their relationship to the case, the efforts to effect joinder, and the schedule proposed to effect joinder.**

At this time, the parties do not anticipate the joinder of any additional party

**G. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56, and, if so, what is the schedule for the intended filing?**

Plaintiff's Position:

After discovery is underway, Plaintiff intends to file RCFC 56 motion(s) on Phase 1 liability issues. Plaintiff presently does not object to Defendant's position that Plaintiff, in advance of filing an expert report, should file a detailed statement of its claims, including specification of the particular rights-creating or duty-imposing sources of law underlying the claims. The parties' proposed Scheduling Order includes such a filing.

Without the benefit of Plaintiff's expert report, however, Plaintiff will likely be unable to provide the additional information that Defendant seeks: *i.e.*, a description of the precise breach(es) of those duties that allegedly occurred, a concise statement of the alleged operative facts constituting the asserted breach(es) of duty, and the alleged damages resulting from such alleged breach(es). Moreover, Plaintiff's early filing of such information could prejudice Plaintiff in this litigation.

Defendant's Position:

As to the proposed Phase 1, Defendant contemplates raising jurisdictional defenses in a single dispositive motion pursuant to RCFC 12(b) or 56 later in this case. Before Defendant can seek dismissal or summary disposition of Plaintiff's claims, however, the Court should require Plaintiff to file a detailed statement of its claims in Phase 1, including specification of the particular rights-creating or duty-imposing sources of law underlying the claims, the precise breach(es) of those duties that allegedly occurred, a concise statement of the alleged operative facts constituting the asserted breach(es) of duty, and the alleged damages resulting from such alleged breach(es). After Plaintiff has specified its claims, the Court should allow Defendant to engage in discovery, for 120 days, to determine the basis, if any, for this Court's subject matter jurisdiction over the

specified claims. Ninety days after completion of this discovery, Defendant would raise its remaining jurisdictional defenses by way of RCFC 12(b) or 56 motion, if it deems that doing so would be appropriate.

In the event that the Court allows Plaintiff to delay or defer the filing of its detailed specification of claims until after Plaintiff has promulgated its expert report(s) or to supplement its detailed specification of claims after Plaintiff's promulgation of its expert report(s), the Court should extend, by a commensurate amount of time, (1) the period for Defendant to take discovery to determine the basis, if any, for the Court's subject matter jurisdiction over the specified claims, and (2) the period for Defendant to file any jurisdictional motions.

**H. What are the relevant factual and legal issues?**

Plaintiff's Position:

The overarching legal issue is whether the United States breached its duties as trustee with regard to Plaintiff's trust funds. To date, Plaintiff has been unable to obtain the relevant documents needed to determine Defendant's breaches of trust duties, although a very preliminary analysis performed by Plaintiff's consultant before Plaintiff filed suit revealed that damages well exceeded $1 million dollars. Depending upon the results of fact discovery and subsequent analysis of these documents by Plaintiff's experts, the legal issues may include, but are not limited to, whether the United States (these issues apply to Phase 1 as well as other phases of this case):

- Failed to collect or timely collect amounts due and owing to the Tribe under leases, contracts, and similar documents;
- Failed to collect the full amounts that were statutorily or contractually required;
- Failed to promptly deposit funds following receipt of payment;

- Failed to obtain investment yields in accordance with the law;
- Kept unreasonably large balances in a cash account;
- Failed to deposit collected monies into the tribe's (interest-bearing) trust accounts;
- Incurred a disbursement lag time and lost interest due to the posting of the withdrawal of the funds from the account before the check had cleared the U.S. Treasury Department account on which it is drawn;
- Failed to assess penalties for late payment;
- Failed to increase commercial lease rental rates upon mandatory period review;
- Made unsupported or otherwise improper disbursements; and
- Whether an accounting is due and the contents of such accounting.

The factual issues involve calculating the amount of damages that flow from the Defendant's breaches of trust.

Defendant's Position:

In Defendant's view, it is presently premature to identify the factual and legal issues (including those for Phase 1) that this Court may have to address at trial on liability or damages, because the precise contours of those issues depend on jurisdictional rulings that Defendant plan to request from the Court. As to the Court's jurisdiction, Defendant sets forth the following relevant factual and legal issues in this case, including Phase 1:

1. Whether Plaintiff's claims are barred by the Statute of Limitations, 28 U.S.C. § 2501.

a. Whether Plaintiff's claims fall within Interior Appropriations Act language, which provides, in relevant part, that a Tribe's claims related to loss or mismanagement of its trust funds shall not begin to accrue until the United States Department of the Interior has provided an

accounting from which the Tribe can determine its losses (see Pub. L. No. 108-447, 118 Stat. 2809), as construed by the Court of Appeals for the Federal Circuit in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004); and

b. Whether Plaintiff's claims accrued more than six years prior to the filing of this case.

2. Whether the Court has jurisdiction over Plaintiff's claims under the Tucker Act or the Indian Tucker Act, 28 U.S.C. §§ 1491(a)(1), 1505.

a. Whether Plaintiff's claims are based on substantive sources of law, such as a statute, treaty, or regulation that establish specific fiduciary or other duties;

b. To the extent that Plaintiff's claims are based on specific duties established in substantive sources of law, whether a breach of those duties would mandate the payment of compensation; and

c. Whether Plaintiff has sufficiently alleged that Defendant has failed to perform any specific money-mandating duties; and

d. Whether Plaintiff's claims were within the exclusive jurisdiction of the Indian Claims Commission.

3. Whether Plaintiff's claims are barred by the doctrine of res judicata or claim preclusion.

**I. What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

Plaintiff's Position:

Plaintiff believes that the likelihood of settlement for the Phase 1 (FY 1973-present) trust fund mismanagement claims is relatively high, since most, if not all, of the legal issues relating to

liability have already been decided by this Court and other federal courts. The main issues will likely relate to Defendant's production of relevant documents necessary to calculate the amount of damages, and how the damages are calculated. Informal discovery thus far has been unproductive, which is why Plaintiff requested that the Court lift the stay. Plaintiff will explore opportunities for settlement of Phase 1 at any and all points, but believes that the most productive time for settlement will occur once fact discovery is well underway and the parties' respective experts have had an opportunity to analyze the documents. Plaintiff, however, does not seek formal ADR.

Defendant's Position:

The parties began exploring the possibility of settlement discussions shortly after the filing of this case. For that reason, the parties jointly requested and received from the Court an extension of time, to and including July 13, 2007, for Defendant to file its Answer or otherwise respond to the Complaint. Dkt. No. 6. On July 13, 2007, the parties filed a joint motion for temporary stay of litigation, so that they could continue exploring settlement discussions and engaging in the informal production of relevant or potentially relevant documents and data. Dkt. No. 12. Counsel for Plaintiff announced at a joint status conference with the Court and Defendant on August 13, 2007, that Plaintiff was withdrawing from the joint temporary stay motion and that it would like to pursue formal discovery, among other things.

Notwithstanding the fact that the parties have not explored successfully settlement discussions thus far, Defendant believes that there is a potential for settlement, alternative dispute resolution (ADR), or other informal resolution of Plaintiff's claims, without the need for protracted litigation. Thus, Defendant remains open to the possibility of further undertaking that potential to fruition.

Also, Defendant has been and continues to be willing to engage in informal measures, such as the production of relevant or potentially relevant documents and data about Plaintiff's trust funds and non-monetary trust assets, outside of the context of formal discovery or litigation, so as to inform the parties in their settlement, ADR, or informal resolution process.

**J. Do the parties anticipate proceeding to trial? Does either party, or do the parties jointly, request expedited trial scheduling and, if so, why?**

Plaintiff's Position:

If the parties cannot settle Phase 1 claims, Plaintiff anticipates proceeding to trial. Plaintiff does not request expedited trial scheduling. Plaintiff has attached to this JPSR a proposed Case Scheduling Order (Attachment 1) for Phase 1.

Defendant's Position:

At this point, it is unclear to Defendant whether Phase 1 or any other phases of this case will proceed to trial. As stated by Defendant in response to Questions A, G, and H above, it is possible that this case may be resolved in whole or in part by dispositive motion. Moreover, as stated by Defendant in its response to Question I above, Defendant remains willing to engage in settlement discussions, ADR, or other means of informally resolving Plaintiff's issues and claims without the need for extended litigation.

In the event that the case does proceed to trial, however, Defendant generally does not believe that such a trial can be accomplished in an expedited manner. In any event, in the interest of judicial efficiency, economy, and conservation of resources, the Court should defer any scheduling of pre-trial proceedings or of the trial itself, until after Plaintiff has provided its detailed specification of claims, the parties have briefed the jurisdictional issues related to the specific claims, and the Court has ruled on those jurisdictional issues. As mentioned above, the jurisdictional

issues include such threshold ones as whether Plaintiff has sufficiently shown the existence of money-mandating duties and whether Plaintiff's claims are barred by the statute of limitations.

**K. Are there special issue regarding electronic case management needs?**

The parties do not foresee any special issues regarding electronic case management.

**L. Is there other information of which the court should be aware at this time?**

Plaintiff's Position:

Regarding a "protective order," Plaintiff does not object to a protective order, as long as such order is consistent with Defendant's duties as trustee and is not unduly burdensome on Plaintiff, such as, by interfering with Plaintiff's ability to consult with other Tribes' attorneys and experts on non-confidential global issues relating to the tribal trust fund cases; by burdening Plaintiff when preparing and filing pleadings and other documents with the court; or by prejudicing Plaintiff by, for example, having to prematurely share litigation strategies with Defendant. Plaintiff understands, however, Defendant's need to keep certain material and information confidential in accordance with Federal law. Plaintiff notes that Defendant, in providing Plaintiff the Arthur Anderson materials, has already released documents that Defendant may consider confidential, including thousands of pages that relate to the trust funds of other tribes and individual Indians.

Defendant's Position:

Defendant notes the following for the Court's information:

1. Defendant is handling a total of 102 Tribal trust accounting and trust mismanagement cases (including this one) that have been brought in this Court and in the United States District Courts. There are currently about 56 cases (including this one) in this Court; nine in various United States District Courts in Oklahoma; and 37 cases in the United States District Court for the District

of Columbia.

2. Defendant believes that a protective order will be necessary to enable Defendant, particularly, the Interior and the Treasury Departments, to produce to Plaintiff certain documents and data that contain confidential information (e.g., protected by the Privacy Act). Plaintiff asserts above that, when Defendant provided to Plaintiff the materials for the results of the Tribal Trust Funds Reconciliation project that related to Plaintiff, Defendant also provided to Plaintiff, as part of those materials, certain documents relating to the trust funds of other Tribes and to individual Indians, which Defendant may consider confidential. Plaintiff does not specify the particular documents to which it refers in making this allegation. Accordingly, Defendant is unable to address the merits of Plaintiff's assertion. Defendant notes that, as a general matter, the Office Of Historical Trust Accounting (OHTA) of the Interior Department provides to a Tribe only those materials that relate to that Tribe's results under the Trust Funds Ronciliation project. If, as part of those materials, the Tribe receives documents relating to the trust funds of other Tribes or individual Indians, it is generally because the receiving Tribe has an interest in those funds. In any event, Defendant will investigate and determine the merits of Plaintiff's assertion, once Plaintiff has identified the particular documents to which it refers.

3. Defendant has filed a motion for remand in the 37 Tribal trust accounting and trust mismanagement cases that have been filed in the United States District Court for the District of Columbia, because Interior has decided to prepare and present a historical accounting plan to address the claims of Tribes (including Plaintiff) for accountings of Tribal trust funds and/or non-monetary trust assets or resources, as required by law. Upon completion and presentation of this historical accounting plan (which addresses accountings of all Tribes, including Plaintiff), Interior

plans to present accountings to the individual Tribes, including Plaintiff, to the extent required. This historical accounting plan and the individual Tribal accountings, in particular, the one for Plaintiff, are likely to have an effect on Plaintiff's trust accounting and trust mismanagement claims herein. Defendants can provide periodic reports, as appropriate, to the Court and Plaintiff herein about the status of Interior's preparation and presentation of its historical accounting plan and the individual accounting for Plaintiff, if the Court deems such periodic reports to be helpful.

**M. Proposed Discovery Plan**

Plaintiff's Position: Plaintiff agrees with Defendant's general approach to staged discovery as set forth in the parties' proposed scheduling order. Other aspects of discovery, however, remain in dispute.

1. Generally:

1.1 When disputes arise that relate to the Discovery Plan, the parties shall attempt to informally resolve the agreement within 15 calendar days, and may grant an extension(s). If the parties cannot resolve the agreement within 15 days and any mutually agreed extension(s), then the aggrieved party may ask the Court for a motion to compel and any other relief.

1.2 The parties may not exceed five depositions per side without mutual agreement of the parties or leave of Court upon good cause shown.

1.3 The parties shall not depose any one deponent for more than one day and for over six hours on that day, without prior agreement of the parties or leave of Court upon good cause shown.

1.4 The parties shall, whenever possible, consolidate depositions to avoid unnecessary travel; shall conduct telephonic or video depositions; and/or shall conduct informal document exchange.

1.5 The United States will, whenever possible, provide documents in electronic OCR format that is capable of being searched.

1.6 No party shall serve over 25 interrogatories, including subparts, without prior agreement of the parties or leave of Court upon good cause shown.

1.7 Defendant shall, as Plaintiff's trustee, at the time that it produces documents or promptly upon request by the Plaintiff, provide information that enables Plaintiff, its consultants and/or experts to comprehend codes, procedures, terms of art, and other information in the documents that is unclear to a layperson. Plaintiff shall make every effort not to burden Defendant with requests.

1.8 Defendant shall, as Plaintiff's trustee, upon request by the Plaintiff, from time to time, make available knowledgeable federal employees or contractors to explain, verbally and/or in writing, reasonable requests by Plaintiff for information that is relevant to the case, including but not limited to information that explains how Defendant has historically collected, managed and disbursed tribal trust funds. Plaintiff shall make every effort not to burden Defendant with requests.

1.9 Documents that are relevant or potentially relevant to Plaintiff's issues and claims herein are located at multiple locations around the country, including federal records repositories. Those documents may be found in many boxes of retired federal records, as well as in active government files. Defendant shall comply with RCFC 34 and all other applicable Rules in producing and identifying the individual item or category of documents sought by Plaintiff. Defendant acknowledges that BISS reports and finding aids are insufficient to comply with the Court's discovery rules.

2. <u>Stages of discovery for Phase 1 claims</u>:

2.1 Discovery in this case should proceed in three distinct stages.

2.2 The first stage would consist of the factual discovery that Plaintiff needs to delineate and define its Phase 1 claims. Discovery methods are Such discovery should be limited to those provided by the Rules, and any informal discovery to which the parties agree to conduct, in addition to that described in the paragraphs above. Defendant recommends 360 days for completion of the initial phase of discovery, and Plaintiff does not initially object. The parties, however, shall make all efforts to complete this discovery sooner.

2.3 The second stage of discovery would begin after Plaintiff files a specific statement of its Phase 1 claims, and last for 120 days. This phase would be limited to the fact discovery required for Defendant's jurisdictional challenges as to Plaintiff's Phase 1 claims (e.g., whether Plaintiff's claims accrued more than six years prior to the filing of this litigation). Within 60 days of the conclusion of this discovery, Defendant would file its dispositive motions raising its jurisdictional defenses. Plaintiff reserves its rights to file additional, limited discovery requests during this discovery phase if Defendant's discovery requests raise issues related to Plaintiff's prosecution of its Phase 1 claims.

2.4 Once the Court has resolved the jurisdictional issues and assuming that the Court finds a jurisdictional basis for proceeding with this litigation, the parties would confer about the scheduling of the third or final stage of discovery, and they would propose a schedule for that discovery to the Court. This stage shall be predominantly devoted to expert discovery although during this stage, the parties would conduct any remaining necessary fact discovery, including fact or RCFC 30(b)(6) depositions, based on the specific claims (if any) that have survived Defendant's jurisdictional challenges. In addition, the parties would conduct expert witness discovery and

otherwise prepare the case for trial. Defendant will submit its expert witness disclosures 180 days after Plaintiff's expert disclosures. The parties will submit expert rebuttal reports within 30 days after their respective receipt of expert witness reports.

Defendant's Position:

1. Generally:

As described above, discovery in the proposed Phase 1 of this case (as in other phases) should proceed in three distinct stages and should be conducted in accordance with the RCFC.

The first stage would consist of the factual discovery that Plaintiff needs to delineate and define the claims that it shall set forth in its statement of claims. Such discovery should be limited to document productions, interrogatories, and requests for admission.

As counsel for the parties have discussed, documents relevant or potentially relevant to Plaintiff's issues and claims herein are located at multiple locations, including federal records repositories, around the country. Those documents may be found in hundreds, possibly thousands, of boxes of retired federal records, as well as active government documents. In order for Defendant to respond to Plaintiff's discovery requests, the parties would have to undertake the following process:

a. The parties would have to identify the boxes that may contain responsive documents;

b. The Solicitor's Office of the Interior Department would have to conduct a pre-inspection privilege review of those identified boxes;

c. Plaintiff's counsel would have to inspect the boxes and identify those documents it wishes to have produced; and

d. Defendant would have to image, code, and conduct a post-inspection confidentiality and privilege review, before producing the images of the requested documents to Plaintiff, pursuant to a confidentiality protective order negotiated by the parties and approved and entered by this Court.

Defendant's position, as told to Plaintiff in a telephone conference of September 25, 2007, is that a request for informal conferences is inconsistent with plaintiff's election for formal discovery. Defendant, therefore, particularly disagrees with Plaintiff's subpart 1.8, and takes a position that, if Plaintiff needs additional information after reviewing documents, interrogatories or depositions would be the more appropriate avenue for such additional information. Defendant further disagrees with Plaintiff's assertions in paragraphs 1.7 and 1.8 that Defendant's role as trustee somehow imposes special discovery obligations on Defendant that are above and beyond the requirements of the RCFCs, including the alleged obligation to provide "informal" discovery to plaintiff. Defendant does not believe that this JPSR is the proper forum or context in which to make legal arguments about a party's discovery obligations. Defendant points out, however, that plaintiff has cited and, indeed, can cite to no statutory, regulatory, or legal authority for its assertions. In particular, the RCFC do not treat parties that serve as trustees any differently than other parties, and they do not impose any special requirements (especially with regard to "informal" discovery) on such parties. To the extent that the parties in this case are engaged in formal discovery, the parties -- including plaintiff -- should be required to undertake formal discovery, as permitted by the RCFC, for any information that they seek from the opposing party.

2. <u>Stages of discovery for Phase 1 claims</u>:

Based on Defendant's experience in other Tribal trust accounting and trust mismanagement cases, depending on the documents requested by Plaintiff, it likely will take longer than 270 days to complete this production process, particularly if Plaintiff insists on such measures as a document confidentiality and identification review before production to Plaintiff. Until Plaintiff propounds document or other discovery requests, Defendant is unable to estimate accurately the amount of time that the Court should allow to complete discovery for this first phase of discovery. For purposes of a proposed scheduling order, however, Defendant agrees with Plaintiff that 360 days is the appropriate amount of time for completion of the initial phase of discovery.

The second stage of discovery would begin after Plaintiff files a specific statement of its claims. This stage would be limited to the fact discovery required for Defendant's jurisdictional challenges (e.g., whether Plaintiff's claims accrued more than six years prior to the filing of this litigation). Although it is difficult to predict the extent of this discovery at this time, i.e., before Plaintiff has provided its detailed specification of its claims, Defendant agrees with Plaintiff that, for purposes of preliminary planning, the second phase proceed for 120 days. Defendant also agrees that, within 90 days of the conclusion of this discovery, Defendant would file its dispositive motions raising its jurisdictional defenses.

Defendant also agrees with Plaintiff that, once the Court has resolved the jurisdictional issues and assuming that the Court finds a jurisdictional basis for proceeding with this litigation, the parties will confer about the scheduling of the third or final stage of discovery and propose a schedule for that discovery to the Court. During this phase, the parties would conduct any remaining fact discovery, including fact or RCFC 30(b)(6) depositions, based on the specific

claims (if any) that have survived Defendant's jurisdictional challenges. In addition, the parties would conduct expert witness discovery and otherwise prepare the case for trial.

In Defendant's past experience with other Tribal trust accounting and trust mismanagement cases involving similar complex breach of trust claims, Plaintiff's full articulation of its claims, as well as the legal and factual bases for those claims, typically do not occur until after Plaintiff has disclosed its expert witnesses. Accordingly, as soon as Defendant obtains Plaintiff's expert witness disclosures, Defendant will likely need to conduct further research to identify and develop evidence from voluminous retired records, not only to rebut Plaintiff's claims but also to support Defendant's own expert analyses.

Without sufficient time to conduct this additional research, Defendant would be prejudiced in its ability to prepare and present an adequate defense at trial. Therefore, to foreclose this kind of prejudice, Defendant proposes that its expert witness disclosures be required no less than 180 days after Plaintiff's expert disclosures.

Respectfully submitted this 28th day of September, 2007,

RONALD J. TENPAS
Acting Assistant Attorney General

SHARON I. HAENSLY
Williams, Kastner & Gibbs, PLLC
Two Union Square
601 Union Street, Suite 4100
P.O. Box 21926
Seattle, WS 98101
Tel: (206) 628-6784
Fax: (206) 628-6611

ROBERT W. RODRIGUES
United States Department of Justice
Environment and Natural Resources
Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 353-8839
Fax: (202) 353-2021

Attorney of Record for Plaintiff

OF COUNSEL:

DEBORA JUAREZ
GABRIEL GALANDA
Williams, Kastner & Gibbs, PLLC
Two Union Square
P.O. Box 21926
Division
Seattle, WA 98101
Tel: (206) 628-6784
Fax: (206) 628-6611

Attorney of Record for Defendant

OF COUNSEL:

CAROL DRAPER
ANTHONY P. HOANG
JASON BRUNO
United States Department of Justice
Environment and Natural Resources

Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0465
Tel: (202) 305-0241
Tel: (202) 305-0434
Fax: (202) 353-2021

ELISABETH C. BRANDON
MICHAEL BIANCO
United States Department of the Interior
Office of the Solicitor
Washington, D.C. 20240

TERESA E. DAWSON
United States Department of the Treasury
Financial Management Service
Office of the Chief Counsel
Washington, D.C. 20227