# DECLARATION OF

# MICHAEL A. BIANCO

## December 20, 2007

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROUND VALLEY INDIAN TRIBES, a Federally recognized Indian Tribe | ) | NO: 06-900L |
| Plaintiff, | ) | Judge Susan G. Braden |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant, | ) | |

DECLARATION OF MICHAEL A. BIANCO

I, Michael A. Bianco, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an Attorney-Advisor in the Indian Trust Litigation Office at the Office of the Solicitor of the Department of the Interior (DOI). I am agency counsel in the above-captioned case.

2. On October 18, 2007, I prepared and sent via facsimile a memorandum to the three offices that I believed to be most likely to have "documents, data or tangible things" within the meaning of this Court's October 1, 2007, Records Retention Order (RRO), to ask for a teleconference to discuss the requirements of that RRO. The three offices were the Bureau of Indian Affairs (BIA) Pacific Regional Office and the BIA Central California Agency, both in Sacramento, California; and the headquarters of the Office of the Special Trustee for American Indians (OST), which is located in Albuquerque, New Mexico. My memorandum was accompanied by copies of the October 1, 2007, RRO and an earlier memorandum by Lawrence Jensen, Deputy Solicitor, dated March 12, 2007, entitled "Litigation Hold: Preservation of Information in Tribal Trust Cases," which had reminded all Interior offices and bureaus of the obligation to preserve all "information concerning any Tribe or group of Indians for which the Department administers or has administered assets in trust." A true and correct copy of my memorandum, together with its attachments, is attached hereto as Exhibit A. I then conducted the first of several telephone conferences with representatives of the BIA Pacific Regional Office, BIA Central California Agency and OST, on October 22, 2007, concerning compliance with the October 1, 2007, RRO entered in this case.

3. On November 20, 2007, I received a copy of a Memorandum from Paul Smyth, Counselor to the Solicitor, addressed to the Office of the Secretary, Assistant Secretaries and other heads of offices and bureaus within DOI. The Smyth Memorandum was accompanied by copies of each of the eight RROs entered to date in tribal trust litigation in the Court of Federal Claims, and it requested each office and bureau to designate, on or before November 29, 2007, a RRO Compliance Coordinator (CC) to document DOI-wide compliance measures for all of those RROs, including that entered in this case. A true and correct copy of the Smyth Memorandum is attached as Exhibit B.

4. On December 6, 2007, I was one of several attorneys from the Solicitor's Office who then participated in a conference call with RRO CCs from throughout DOI, in order to further discuss RRO compliance measures. A true and correct copy of the letter faxed to all participants on December 7, 2007, that memorialized this teleconference, including specific steps to be taken to document various RRO compliance measures, is attached as Exhibit C.

5. On December 18, 2007, I received a copy of a draft guidance memo faxed by my Office to all RRO CCs, that same day, which detailed an additional range of compliance measures potentially applicable to some or all DOI offices and bureaus and requested responses from all addressees on or before January 4, 2008. A true and correct copy of that draft guidance memo is attached as Exhibit D.

Executed on December 20, 2007.

MICHAEL A. BIANCO

# DECLARATION OF

# MICHAEL A. BIANCO

# EXHIBIT A

# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240

## FAX TRANSMISSION NOTICE

**PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION**

**TO:** Clay Gregory
Regional Director — **VIA FAX** to (916) 978-6099
Pacific Regional Office, Bureau of Indian Affairs

Troy Burdick
Superintendent — **VIA FAX** to (916) 930-3780
Central California Agency, Bureau of Indian Affairs

John Marshall
Acting Chief of Staff — **VIA FAX** to (505) 816-1319
Office of the Special Trustee for American Indians

**FROM:** Michael A. Bianco — (FAX: (202) 219-0444)
Indian Trust Litigation Office

**RE:** *Round Valley Indian Tribes v. United States*, No. 06-0900 (Ct. Fed. Cl.)

**NO. OF PAGES TO FOLLOW:** ___ **DATE:** 18 October 2007

**NOTICE:** The materials that follow this transmission notice are intended for the exclusive information and use of the addressee(s), and may include information that is privileged and/or confidential in nature. If you have received these materials through an error in transmission, please notify the sender immediately to arrange for the return of your copy. Thank you.

---

We have received an order entered in the Court of Federal Claims in this case on October 1, 2007, requiring Interior to retain certain "documents, data and tangible things" with respect to issues and claims raised by the Round Valley Tribe in this case (the "record retention order" or "RRO"). I enclose a copy of the RRO for your consideration. I also enclose a copy of an earlier Solicitor's Office memorandum concerning related document retention guidance.

Since we will have to report soon to the Court on this matter, I would like to schedule a teleconference for next Monday or Tuesday to discuss Interior's obligations under this RRO with all of you, in some detail. I anticipate that such a call may last from one to two hours. Please call me at (202) 208-4458, before the close of business (ET) tomorrow, **Friday, October 19,** with your respective preferences for the day(s) and time(s) for this teleconference. I apologize

for the short notice, and thank you very much for your help in defending this case.

# In the United States Court of Federal Claims

No. 06-900L
Filed October 1, 2007

*************************************

ROUND VALLEY INDIAN TRIBES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

*************************************

**PROTECTIVE ORDER**

Pursuant to Rule 26(c) of the Rules of the Court of Federal Claims (RCFC), as well as the Court's inherent power to regulate its proceedings and maintain the integrity of its functions, the Court hereby issues the following Order:

**1. Obligation to Preserve Certain Documents, Data, and Tangible Things**

During the pendency of this litigation (including informal settlement discussions, ADR, and/or any appeals herein), the parties, as well as their agencies, their employees, and their agents, shall take reasonable steps to preserve those documents, data, or tangible things that are in their possession, custody, or control, and that contain information that is relevant to, or may reasonably lead to the discovery of information that is relevant to, the subject matter of the pending litigation (including claims and defenses), as that subject matter is set forth in the Complaint and any amendments thereof and the Answer to such complaint and any amendments thereof. This Order does not impose an obligation on the parties to retain duplicate copies of the documents, data, or tangible things that are subject to the Order. Additionally, nothing in this Order Supplants the discovery obligations under the RCFC.

**2. Mechanism for Ensuring Compliance With This Order**

Defendant, in consultation with Plaintiff, shall establish a mechanism for ensuring on-going compliance with this Order, such as periodic reminders of record retention obligations to be sent to appropriate document repositories by a date to be determined by the Court and then every six months thereafter for the pendency of this case. Defendant shall file a report setting forth its compliance mechanism, within 60 days of the date of this Order. The compliance mechanism shall include the

parties' specification of the subject matters at issue in this litigation and the documents, data, or tangible things that the parties reasonably anticipate to be subject to discovery in this case and to this Order. Counsel shall notify the Court and opposing counsel, as soon as is reasonably possible, if, at any time, they become aware of a violation of Paragraph 1 of this Order (i.e., the destruction or loss of certain documents, data, and/or tangible things).

**3. Definitions**

For purposes of this Order, the following terms are to defined as follows:

(a) "Documents, data, and tangible things" shall be interpreted to consist of writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic mail (e-mail) ; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media, such as tapes, disks, and cards; printouts; document image files; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic or digital recordings, or transcripts thereof; and circulated drafts. The term also shall include information that serves to identify, locate, or link documents, data, and tangible things, such as file inventories and indices.

(b) "Preserve" shall be interpreted to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery in this case as related to the subject matters defined by the Parties under paragraph 2 above. "Preserve" includes the parties taking reasonable steps to prevent the partial or full destruction, alteration, deletion, shredding, incineration, wiping, theft, or mutation of documents, data, and tangible things, and any negligent or intentional handling that would make material incomplete or inaccessible.

**4. Movement(s) or Transfer(s) of Certain Documents, Data, and Tangible Things**

In the event that Defendant anticipates moving or transferring trust documents relating to Plaintiff from the Central California Agency and Pacific Regional Office of the Bureau of Indian Affairs (BIA) to the American Indian Records Repository (AIRR), Defendant shall provide Plaintiff with notice of such document movement at least 20 days in advance of the movement. Such written advance notice shall include a copy of any move plans and box inventories produced pursuant to regulations and procedures governing movement of trust documents.

**5. Dispute Resolution**

If a party desires clarification of any issue(s) related to the parties' obligations pursuant to, or compliance with, this Order, or believes that the opposing party has violated any term of this Order, the party shall notify the opposing party in writing and state the issue(s) requiring clarification or the grounds upon which the party has formed such belief. As soon as practicable after receiving such written notification, the parties shall meet and confer in an attempt to clarify the issue(s) in a

mutually agreeable manner or resolve the dispute. If the parties cannot clarify the issue(s) in a mutually agreeable manner or do not resolve the dispute, within a period of 20 days either party may file a motion with the Court seeking a ruling regarding the parties' obligations under, and compliance with, this Order.

**6. Further Instructions, Clarification, or Modification of This Order**

Each party may apply to the Court, at any time, for further instructions, clarification, or modification of this Order, regarding, inter alia, their obligations to preserve specific categories of documents, data, and tangible things covered by the Order. The parties are encouraged to confer among themselves and to make a joint proposal or submission to the Court, wherever appropriate or possible.

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**

# United States Department of the Interior

OFFICE OF THE SOLICITOR

MAR 1 2 2007

MEMORANDUM

To: Office of the Secretary
Office of the Solicitor
Office of the Special Trustee
Office of Historical Trust Accounting
Office of the Inspector General
Office of Assistant Secretary - Indian Affairs
Bureau of Indian Affairs
Office of Assistant Secretary - Policy, Management, and Budget
Office of Hearings and Appeals
Office of Assistant Secretary - Land and Minerals
Minerals Management Service
Office of Surface Mining
Bureau of Land Management
Office of Assistant Secretary - Fish, Wildlife, and Parks
Fish and Wildlife Service
Office of Assistant Secretary - Water and Science
Bureau of Reclamation
U.S. Geological Survey

From: Lawrence J. Jensen
Deputy Solicitor

Subject: Litigation Hold: Preservation of Information in Tribal Trust Cases

As you may know, eighty Tribal plaintiffs, including some Indian groups that are not federally recognized, recently filed actions against the Department of the Interior ("Department") asserting claims of breach of trust and/or asset mismanagement (collectively, "Tribal Trust cases"). This gives rise to an extremely important obligation under Federal law to preserve material that is or may be relevant to the Tribal Trust cases.

The purpose of this Litigation Hold is to inform you of the scope of this obligation and what actions are required to comply with it. The preservation of information will primarily be carried out by individual employees and contractors (any reference herein to "employees" includes contractor employees). Therefore, it is imperative that a copy of this Litigation Hold reaches every employee who may possess relevant information in your bureau or office.

**Information To Be Preserved:**

The information that must be preserved consists of all "documents, data, and tangible things" in the possession, custody, or control of your bureau or office that are or may be relevant to the subject matter of the Tribal Trust cases. "Documents, data, and tangible things" encompass paper documents, electronically stored information (discussed below), and other materials, such as maps, videos, calendars, charts, and similar items.

Attached is a list identifying the individual Tribal plaintiffs whose information must be preserved. Additionally, the Native American Rights Fund has filed an action purporting to be on behalf of all other Tribes that received materials as part of the Tribal Reconciliation Project. Therefore, this Litigation Hold covers information concerning any Tribe or group of Indians for which the Department administers or has administered assets in trust.

The Tribal Trust cases concern the management and accounting of tribal resources and funds held in trust by the Department. Accordingly, information that is or may be relevant to these cases includes, without limitation, anything reflecting, referring or relating to:

1. any asset, such as funds, land, minerals, forestry, sand and gravel, or other resources, that is, or at any time has been, held in trust by the United States or its agents for Tribes or Indian groups ("trust asset");
2. policies, procedures, guidelines, or correspondence relating to any aspect of the management or administration of trust assets;
3. proceeds, interest, or income from trust assets; or disbursement, distribution, disposition or transfer of any trust assets;
4. reports, appraisals, reconciliations, or evaluations of any trust assets; and
5. information that serves to identify, locate, or link any relevant information, such as file inventories, file folders, and indices.

The timeframe of information that must be preserved is from a yet-to-be-determined beginning date through the present, which means that information created in the future must also be preserved.

**General Preservation Requirements:**

Employees are required to take "reasonable steps" to preserve the information described above. Reasonable steps, at a minimum, include ensuring that information is not purged pursuant to a records disposition schedule or otherwise inadvertently destroyed. This obligation also extends to records maintained in off-site storage facilities, which may include, in some instances, Federal Records Centers. At the present time, this obligation is only to identify and preserve the information. You will be notified if anything additional is required as the Tribal Trust cases proceed.

**Preservation of Electronically Stored Information ("ESI"):**

Under new amendments to the Federal Rules of Civil Procedure, the preservation requirement explicitly relates to electronically stored information. ESI can include, but is not limited to:

- E-mail (including attachments);
- Instant messages;
- Electronic calendars, task lists, and other organizational aids;
- Word processing documents;
- Spreadsheets;
- Databases;
- Audio and video recordings; and
- Voicemail.

ESI may be located on network systems and servers, local hard drives, laptops, storage media, (including flash drives, diskettes, and CD-ROMs), as well as on PDAs (such as Blackberries) and cell phones. Note that home computers, cell phones, and other devices used for work may also contain relevant or potentially relevant information that must be identified and preserved. Further, the hard drive and network files of departing employees must be identified and preserved.

Your IT personnel will be responsible for taking steps to preserve ESI from a technical standpoint. Employees should seek assistance from the IT personnel as necessary to preserve their ESI, and in no case should they delete any relevant information.

**Conclusion:**

Immediate compliance with this Litigation Hold is essential to protect the Department from lengthy—and avoidable—discovery disputes that consume bureau time and resources and other negative consequences, such as monetary sanctions and evidentiary inferences that would limit the Department's ability to defend against the claims in the cases. This Litigation Hold also protects individual managers and employees by providing them basic guidance on how to comply with their legal requirements.

Thank you for your prompt attention to this matter. Please direct any questions about this memorandum to Paul Smyth, Counselor to the Solicitor, (202-208-4307).

Attachment

# DECLARATION OF

# MICHAEL A. BIANCO

# EXHIBIT B

# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240

NOV 2 0 2007

IN REPLY REFER TO:

**MEMORANDUM**

**To:** **Office of the Secretary**
**Office of the Solicitor**
**Office of the Special Trustee**
**Office of Historical Trust Accounting**
**Office of the Inspector General**
**Office of Assistant Secretary - Indian Affairs**
**Bureau of Indian Affairs**
**Office of Assistant Secretary - Policy, Management, and Budget**
**Office of Hearings and Appeals**
**Office of Assistant Secretary - Land and Minerals**
**Minerals Management Service**
**Office of Surface Mining**
**Bureau of Land Management**
**Office of Assistant Secretary - Fish, Wildlife, and Parks**
**Fish and Wildlife Service**
**Office of Assistant Secretary - Water and Science**
**Bureau of Reclamation**
**U.S. Geological Survey**

**From:** Paul B. Smyth, Counselor to the Solicitor

**Subject:** Compliance with Records Retention Orders in Tribal Trust Cases: *Swinomish Indian Tribal Community v. United States*; *Navajo Nation v. United States; Round Valley Indian Tribes v. United States; Pawnee Nation of Oklahoma v. United States; Kaw Nation v. United States; Quechan v. United States*

In the last few months, two judges in the Court of Federal Claims, Judge Allegra and Judge Braden, have entered Records Retention Orders ("RROs") in the above cases. Copies of these, as well as of two earlier (2004) RROs, are attached for your reference.[1]

Although the RROs differ in some specific provisions, each of them imposes a broad duty on all U.S. Government employees, contractors, and volunteers to preserve all "documents, data, and tangible things" in their possession, custody or control containing information that is relevant to, or may reasonably lead to the discovery of information relevant to, the subject matter involved in the pending litigation ("Relevant Information"). Each RRO also requires that mechanisms for ensuring compliance with the RRO be established, and that the Court be advised of the specific

[1] The 2007 RROs are in addition to those entered in 2004 by Judge Allegra in *Jicarilla Apache Tribe v. United States* and *Pueblo of Laguna v. United States*, which still remain in effect. To date, no other judges have entered RROs in any other tribal trust cases.

features of those mechanisms. Please note that some of the RROs expressly provide for individual sanctions for non-compliance. In addition (and as would be the case even if these RROs had not been entered in these cases), Interior could be subject to adverse findings on the merits of the underlying litigation if the Court determines that any Relevant Information has been destroyed or lost.

The staff attorneys assigned to these cases in the Indian Trust Litigation Office already have contacted the Bureau of Indian Affairs and/or the Office of the Special Trustee, by phone and/or mail, to inform them of the requirements of their respective RROs. These attorneys also have asked BIA and/or OST to assist them in identifying other U.S. Government repositories of Relevant Information for any of these tribes, with particular focus on any repositories that may exist within the Department of the Interior. Based on the information received to date, it appears likely that each of your bureaus and offices may have Relevant Information related to at least one of the tribes listed above.

**Conclusion:**

As a first step in documenting Department-wide efforts to put in place compliance measures that will enable all bureaus and offices to document their respective ongoing efforts to ensure that Relevant Information is appropriately safeguarded, please provide me with the name and contact information of the person or persons you wish to designate as the RRO Compliance Coordinator for your bureau or office. As some of these RROs will require compliance filings to be made with the Court as early as Friday, November 30, 2007, I ask that you provide me with this information **no later than the close of business on Thursday, November 29, 2007.**

Please direct any questions about this memorandum to Elisabeth Brandon, ITLO Tribal Trust Team Leader (at 202-208-4218).

Thank you very much for your prompt attention to this matter.

Sincerely,

Paul B. Smyth
Counselor to the Solicitor

Attachments

# In the United States Court of Federal Claims

No. 07-002L
Filed October 26, 2007

PAWNEE NATION OF OKLAHOMA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## PROTECTIVE ORDER

Pursuant to Rule of the Court of Federal Claims 26(c) ("RCFC"), as well as the Court's inherent power to regulate its proceedings and maintain the integrity of its functions, the Court hereby issues the following Order:

**1. Obligation to Preserve Certain Documents, Data, and Tangible Things**

During the pendency of this litigation (including informal settlement discussions, ADR, and/or any appeals herein), the parties, as well as their agencies, their employees, and their agents, will take reasonable steps to preserve those documents, data, or tangible things that are in their possession, custody, or control, and that contain information that is relevant to, or may reasonably lead to the discovery of information that is relevant to, the subject matter of the pending litigation (including claims and defenses), as that subject matter is set forth in the Complaint and any amendments thereof and the Answer to such complaint and any amendments thereof. This Order does not impose an obligation on the parties to retain duplicate copies of the documents, data, or tangible things that are subject to the Order. Additionally, nothing in this Order Supplants the discovery obligations under the RCFC.

**2. Mechanism for Ensuring Compliance With This Order**

Defendant, in consultation with Plaintiff, shall establish a mechanism for ensuring on-going compliance with this Order, such as periodic reminders of record retention obligations to be sent to appropriate document repositories by a date to be determined by the Court and then every six months

thereafter for the pendency of this case. Defendant shall file a report setting forth its compliance mechanism, within 60 days of the date of this Order. The compliance mechanism shall include the parties' specification of the subject matters at issue in this litigation and the documents, data, or tangible things that the parties reasonably anticipate to be subject to discovery in this case and to this Order. Counsel shall notify the Court and opposing counsel, as soon as is reasonably possible, if, at any time, they become aware of a violation of Paragraph 1 of this Order (i.e., the destruction or loss of certain documents, data, and/or tangible things).

**3. Definitions**

For purposes of this Order, the following terms are to defined as follows:

(a) "Documents, data, and tangible things" shall be interpreted to consist of writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic mail (e-mail) ; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media, such as tapes, disks, and cards; printouts; document image files; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic or digital recordings, or transcripts thereof; and circulated drafts. The term also shall include information that serves to identify, locate, or link documents, data, and tangible things, such as file inventories and indices.

(b) "Preserve" shall be interpreted to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery in this case as related to the subject matters defined by the Parties under paragraph 2 above. "Preserve" includes the parties taking reasonable steps to prevent the partial or full destruction, alteration, deletion, shredding, incineration, wiping, theft, or mutation of documents, data, and tangible things, and any negligent or intentional handling that would make material incomplete or inaccessible.

**4. Movement(s) or Transfer(s) of Certain Documents, Data, and Tangible Things**

In the event that Defendant anticipates moving or transferring trust documents relating to Plaintiff from the Southern Plains Regional Office (BIA) and the Pawnee Agency (BIA) to the American Indian Records Repository (AIRR), Defendant shall provide Plaintiff with notice of such document movement at least 20 days in advance of the movement. Such written advance notice shall include a copy of any move plans and box inventories produced pursuant to regulations and procedures governing movement of trust documents.

**5. Dispute Resolution**

If a party desires clarification of any issue(s) related to the parties' obligations pursuant to, or compliance with, this Order, or believes that the opposing party has violated any term of this

Order, the party shall notify the opposing party in writing and state the issue(s) requiring clarification or the grounds upon which the party has formed such belief. As soon as practicable after receiving such written notification, the parties shall meet and confer in an attempt to clarify the issue(s) in a mutually agreeable manner or resolve the dispute. If the parties cannot clarify the issue(s) in a mutually agreeable manner or do not resolve the dispute, within a period of 20 days either party may file a motion with the Court seeking a ruling regarding the parties' obligations under, and compliance with, this Order.

**6. Further Instructions, Clarification, or Modification of This Order**

Each party may apply to the Court, at any time, for further instructions, clarification, or modification of this Order, regarding, inter alia, their obligations to preserve specific categories of documents, data, and tangible things covered by the Order. The parties are encouraged to confer among themselves and to make a joint proposal or submission to the Court, wherever appropriate or possible.

The court, however, reserves the right, after reviewing the record and other information submitted by the parties, to modify this Protective Order in the event such information is not confidential, privileged, proprietary, or would adversely affect national defense and/or national security upon public disclosure.

**IT IS SO ORDERED.**

s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

# In The United States Court of Federal Claims

No. 06-934L

(Filed: October 24, 2007)

THE KAW NATION OF OKLAHOMA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## DOCUMENT PRESERVATION ORDER

This matter comes before the court after a joint status conference held on September 11, 2007, at which the parties were directed to attempt to negotiate a mutually agreeable Document Preservation Order. The parties were largely unsuccessful in this regard.

Nonetheless, the court finds that good cause exists for approval and entry of a Document Preservation Order pursuant to RCFC 26(c) as well as the court's inherent power to regulate its proceedings and maintain the integrity of its functions. *See Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135-37 (2004). As such, the court hereby **ORDERS** as follows:

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant and its departments, agencies, employees, agents, and contractors must take reasonable steps to preserve every document, datum, or tangible thing in its possession, custody, or control containing information that is relevant to, or is reasonably calculated to lead to the discovery of admissible evidence relevant to, the subject matter involved in the pending litigation (Relevant Records). Plaintiff is reminded that it has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection and Production.**

   (a) Defendant shall move Relevant Records that, as of the date of this order, are inactive as defined by the Department of Interior (Interior) Manual Part 303, Chapter 6, wherever located, to the Gallup BIA Warehouse in Gamerco, New Mexico, or such other location as may be agreed upon by the parties, at which location such records shall be made available to plaintiff for purposes of

Case 1:06-cv-00934-FMA Document 22 Filed 10/24/2007 Page 2 of 7

inspection. At least 10 calendar days before movement of the records from their present locations to Gamerco (or as otherwise agreed), defendant will provide plaintiff with an intermediate move plan or plans, which shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of custody; and the signature of the official responsible for the move. The move process may be monitored by plaintiff or its representative.

(b) After reviewing the above referenced inactive Relevant Records for privileged material, if necessary, defendant shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) Within 35 days after entry of this order, defendant shall provide to plaintiff any and all existing indices and inventories that include the inactive records referenced in paragraph 2(a), said documents to be provided in the most usable form readily available. Defendant shall provide to plaintiff additional or supplemental indices or inventories of inactive Relevant Records within 21 days after the creation or discovery of such indices or inventories.

(ii) Within 35 days after receiving such indices or inventories from defendant or within some other time as agreed to by the parties, plaintiff shall designate boxes or records listed in the provided indices or inventories that plaintiff wishes to review for Relevant Records.

(iii) Within 63 days after the date on which plaintiff designates the boxes it wishes to inspect, defendant will begin to make available, on a rolling basis, the boxes from such office(s) for plaintiff's inspection at the BIA warehouse in Gamerco.

(iv) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from defendant that the designated record has become available for inspection, during which time plaintiff may identify records for production. This inspection period may be extended by agreement of the parties or by the court for good cause shown. At the time of such inspection, defendant shall permit plaintiff to identify or document the condition of records identified by plaintiff for production, including, without limitation, through the use of audio recorders, digital cameras, or document scanning, provided that no such recordings made by plaintiff shall constitute production of records. Plaintiff's documentation shall be subject to the Protective Order entered separately by this court this day.

(c) After plaintiff has inspected and identified records for production pursuant to paragraph 2(b) above, defendant may move those records to the American Indian

Records Repository (AIRR) in Lenexa, Kansas, in accordance with defendant's procedures and protocols for the movement of Indian trust records contained in the Indian Affairs Records Management Manual. After such move(s), defendant shall scan the records identified by plaintiff; code the scanned images at the document level, including data fields as agreed to by the parties; and provide such images and coding to plaintiff within such schedule as agreed to by the parties. For documents originating in media other than paper, defendant shall provide the document in a reasonably usable form, including any form reasonably requested by plaintiff, and also shall provide plaintiff with an opportunity to test or sample such documents upon reasonable request. Defendant shall expedite and prioritize the scanning, coding, and production to plaintiff of identified records.

(d) In accordance with defendant's procedures and protocols for the movement of Indian trust records contained in the Indian Affairs Records Management Manual, defendant may move any boxes that have been either: not designated for inspection within the time period provided for, or agreed to, under paragraph 2(b)(ii); or designated but not reviewed by plaintiff within the applicable period provided for under paragraph 2(b)(iv). Nothing herein prevents plaintiff from also seeking to inspect such records in whatever location they may be found in the future.

(e) Within such schedule as agreed to by the parties, defendant shall input into Interior's Box Inventory Search System (BISS) data identifying the boxes, files, and documents containing all Relevant Records located as of the date of this order at the AIRR; provide plaintiff access to the BISS database at the Albuquerque office of plaintiff's counsel and the AIRR; and make those records available for plaintiff's inspection at the AIRR. At the time of such inspection, defendant shall permit plaintiff to identify or document the condition of records identified by plaintiff for production, including, without limitation, through the use of audio recorders or digital cameras, provided that no such recordings made by plaintiff shall constitute production of records. Defendant also shall provide to plaintiff all manuals, training materials, and similar documents created by or for Interior which describe the BISS database and its manner of operation and access. Defendant shall provide to plaintiff additional or supplemental indices or inventories for the AIRR that include Relevant Records promptly after the creation of such indices or inventories.

(f) The parties shall meet and confer to discuss schedules and procedures to be used for defendant to make available to plaintiff, for purposes of inspecting active or inactive Relevant Records (determined as of the date of this order), as follows:

(i) Defendant, after conducting any necessary review of the records for privileged material, shall make the respective record collections available to plaintiff for purposes of inspection and designation. Unless otherwise agreed by the parties, defendant shall provide existing indices or

Case 1:06-cv-00934-FMA Document 22 Filed 10/24/2007 Page 4 of 7

inventories for such records as soon as practicable and make such records available for plaintiff's inspection within 63 days of plaintiff's designation of them,

(ii) Plaintiff shall inspect the records upon receiving notification from defendant that the records have become available for inspection. If plaintiff identifies records for production, defendant shall make arrangements for scanned and coded images, or other data in a reasonably usable form, to be delivered to plaintiff as soon as practicable.

(iii) Unless otherwise agreed by the parties, moves of Relevant Records that are inactive as of the date of this order shall be subject to the intermediate move plan requirement of paragraph 2(a) above.

(g) The parties shall attempt to reach agreement on all matters related to document inspection and shall coordinate inspection of Relevant Records in a manner that will minimize the disruption of ongoing governmental activities.

3. **Indexation and Inventorying.**

(a) Within 126 days after entry of this order, the parties shall identify all their respective repositories besides the AIRR and those facilities addressed in paragraph 2(a) above that are reasonably anticipated to be subject to discovery in this case and determine whether indices or inventories exist for each location. The parties also shall have ongoing duties to identify evidence relevant to this case in their respective possession, custody, or control.

(b) Within the same time period or as the parties may agree, the parties shall provide to each other existing indices and inventories for such repositories in the most useful form readily available, except for indices and inventories previously provided pursuant to paragraph 2 above.

(c) If a party is unable to provide the other with indices or inventories of its repositories containing evidence relevant to this case, then the parties shall meet and confer as soon as practicable about the appropriateness of using a collection-by-collection approach, including on-site reviews, to address the sufficiency of existing indices or inventories and to discuss whether additional indexation of specific record collections is necessary and the scope, timing, and method of any additional indexation or elaboration of inventories at each location based on the particular facts relating to each repository and record characteristics. The parties shall provide additional or supplemental indices or inventories that include evidence relevant to this case within 21 days after the creation or discovery of such indices or inventories.

(d) The parties shall cooperate in good faith to attempt to reach agreement on all issues regarding the indexation and inventorying of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(i) the extent of the indexation and inventorying obligation, identifying the types of material to be indexed and inventoried, the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;

(ii) the identification of persons responsible for carrying out the indexation or inventorying;

(iii) whether indexation or inventorying will require suspending or modifying any routine processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;

(iv) the timing of the indexation or inventorying process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;

(v) the methods to index or inventory any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;

(vi) the anticipated costs of indexation and inventorying and ways to reduce or share these costs; and

(vii) policies and procedures to review and modify the indexation and inventorying obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

4. **Compliance.** The parties shall establish policies, procedures, and controls for monitoring compliance with this order and, on or before 63 days after entry of this order, file a status report with the court describing those policies, procedures, and controls. The parties' counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (*e.g.*, the destruction or loss of documents).

5. **Definitions.** For purposes of this order:

(a) "Documents, data, and tangible things" is to be interpreted broadly to include, without limitation, writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets;

software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic tape or digital recordings, or transcripts thereof; drafts; jottings; and notes. The term also includes information that serves to identify, locate, or link documents, data, and tangible things, including, without limitation, file inventories; indices; and metadata.

(b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, mutation, negligent handling, or intentional mishandling of any documents, data, or tangible things, if such action would make that material incomplete or inaccessible.

6. **Further Instructions; Modification.**

(a) If after counsel confer, unresolved issues remain concerning matters arising under this order or other material aspects of preservation, inspection and production, or indexation and inventorying, the parties shall file with the court a statement of the unresolved issues together with each party's proposal for their resolution.

(b) Either party also may apply to the court for further instructions regarding, *inter alia*:

(i) defendant's obligation to preserve specific categories of documents, data, or tangible things;

(ii) any aspect of the inspection or indexation tasks not herein clearly defined; and

(iii) allocating copying costs and maintaining the confidentiality of information contained in various records.

(c) Recognizing that the parties may perceive better ways of accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. **Sanctions.** Failure to comply with this order may lead to the imposition of sanctions. *See Pueblo of Laguna*, 60 Fed. Cl. at 135-37; *United Medical Supply Co., Inc. v. United States*, 77 Fed. Cl. 257 (2007).

8. **Dissemination.** This order shall be distributed by defendant and plaintiff to all relevant agencies, departments, offices, divisions, contractors, and individuals.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

# In the United States Court of Federal Claims

No. 06-888L
Filed October 25, 2007

| | |
|---|---|
| QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION, Plaintiff, | * |
| v. | * |
| THE UNITED STATES, Defendant. | * |

## PROTECTIVE ORDER

Pursuant to Rule of the Court of Federal Claims 26(c) ("RCFC"), as well as the Court's inherent power to regulate its proceedings and maintain the integrity of its functions, the Court hereby issues the following Order:

### 1. Obligation to Preserve Certain Documents, Data, and Tangible Things

During the pendency of this litigation (including informal settlement discussions, ADR, and/or any appeals herein), the parties, as well as their agencies, their employees, and their agents, will take reasonable steps to preserve those documents, data, or tangible things that are in their possession, custody, or control, and that contain information that is relevant to, or may reasonably lead to the discovery of information that is relevant to, the subject matter of the pending litigation (including claims and defenses), as that subject matter is set forth in the Complaint and any amendments thereof and the Answer to such complaint and any amendments thereof. This Order does not impose an obligation on the parties to retain duplicate copies of the documents, data, or tangible things that are subject to the Order. Additionally, nothing in this Order Supplants the discovery obligations under the RCFC.

### 2. Mechanism for Ensuring Compliance With This Order

Defendant, in consultation with Plaintiff, shall establish a mechanism for ensuring on-going compliance with this Order, such as periodic reminders of record retention obligations to be sent to

appropriate document repositories by a date to be determined by the Court and then every six months thereafter for the pendency of this case. Defendant shall file a report setting forth its compliance mechanism, within 60 days of the date of this Order. The compliance mechanism shall include the parties' specification of the subject matters at issue in this litigation and the documents, data, or tangible things that the parties reasonably anticipate to be subject to discovery in this case and to this Order. Counsel shall notify the Court and opposing counsel, as soon as is reasonably possible, if, at any time, they become aware of a violation of Paragraph 1 of this Order (i.e., the destruction or loss of certain documents, data, and/or tangible things).

**3. Definitions**

For purposes of this Order, the following terms are to defined as follows:

(a) "Documents, data, and tangible things" shall be interpreted to consist of writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic mail (e-mail) ; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media, such as tapes, disks, and cards; printouts; document image files; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic or digital recordings, or transcripts thereof; and circulated drafts. The term also shall include information that serves to identify, locate, or link documents, data, and tangible things, such as file inventories and indices.

(b) "Preserve" shall be interpreted to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery in this case as related to the subject matters defined by the Parties under paragraph 2 above. "Preserve" includes the parties taking reasonable steps to prevent the partial or full destruction, alteration, deletion, shredding, incineration, wiping, theft, or mutation of documents, data, and tangible things, and any negligent or intentional handling that would make material incomplete or inaccessible.

**4. Movement(s) or Transfer(s) of Certain Documents, Data, and Tangible Things**

In the event that Defendant anticipates moving or transferring trust documents relating to Plaintiff from the Colorado River Agency, the Fort Yuma Agency, and Phoenix (Western) Regional Office of the Bureau of Indian Affairs (BIA) to the American Indian Records Repository (AIRR), Defendant shall provide Plaintiff with notice of such document movement at least 20 days in advance of the movement. Such written advance notice shall include a copy of any move plans and box inventories produced pursuant to regulations and procedures governing movement of trust documents.

**5. Dispute Resolution**

Case 1:06-cv-00888-SGB Document 19 Filed 10/25/2007 Page 3 of 3

If a party desires clarification of any issue(s) related to the parties' obligations pursuant to, or compliance with, this Order, or believes that the opposing party has violated any term of this Order, the party shall notify the opposing party in writing and state the issue(s) requiring clarification or the grounds upon which the party has formed such belief. As soon as practicable after receiving such written notification, the parties shall meet and confer in an attempt to clarify the issue(s) in a mutually agreeable manner or resolve the dispute. If the parties cannot clarify the issue(s) in a mutually agreeable manner or do not resolve the dispute, within a period of 20 days either party may file a motion with the Court seeking a ruling regarding the parties' obligations under, and compliance with, this Order.

**6. Further Instructions, Clarification, or Modification of This Order**

Each party may apply to the Court, at any time, for further instructions, clarification, or modification of this Order, regarding, inter alia, their obligations to preserve specific categories of documents, data, and tangible things covered by the Order. The parties are encouraged to confer among themselves and to make a joint proposal or submission to the Court, wherever appropriate or possible.

The court, however, reserves the right, after reviewing the record and other information submitted by the parties, to modify this Protective Order in the event such information is not confidential, privileged, proprietary, or would adversely affect national defense and/or national security upon public disclosure.

**IT IS SO ORDERED.**

s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

# In the United States Court of Federal Claims

No. 02-25L

(Filed: March 19, 2004)

JICARILLA APACHE NATION, formerly
JICARILLA APACHE TRIBE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

FILED
MAR 19 2004
U.S. COURT OF
FEDERAL CLAIMS

**ORDER**

For the reasons discussed in the order issued today in *Pueblo of Laguna v. United States*, No. 02-24L, and pursuant to RCFC 16(c) and 26(c), as well as this court's inherent power to regulate its proceedings and maintain the integrity of its functions, **IT IS ORDERED**:

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant, its agencies, and its employees must take reasonable steps to preserve every document, data or tangible thing in its possession, custody or control, containing information that is relevant to, or may reasonably lead to the discovery of information relevant to, the subject matter involved in the pending litigation. Plaintiff is reminded that it also has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection.**

   (a) The Department of the Interior ("DOI") shall move inactive Jicarilla Apache Nation records from the BIA Southwest Regional Office to the Office of Trust Records ("OTR"), in Albuquerque, New Mexico, at which location said inactive records shall be made available to plaintiff for purposes of inspection. At least 10 calender days prior to movement of the inactive records, DOI will provide plaintiff with a move plan, which plan shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of

custody; and the signature of the official responsible for the move. Compliance with the move plan may be monitored by plaintiff or its representative.

(b) After reviewing the inactive records at OTR and the Jicarilla Agency for privileged material, DOI shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) On or before April 2, 2004, DOI shall provide plaintiff with any and all existing indices of inactive records or record boxes located at the OTR, the Southwest Regional Office, or the Jicarilla Agency.

(ii) On or before May 3, 2004, plaintiff shall designate the boxes or records listed in the provided indices that plaintiff wishes to review for Jicarilla Apache Nation trust records.

(iii) Within 49 days from the date on which plaintiff designates which boxes at OTR it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at OTR for plaintiff's inspection.

(iv) Within 63 days from the date on which plaintiff designates which boxes at the Jicarilla Agency it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at the Jicarilla Agency for plaintiff's inspection.

(c) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from DOI that the designated record has become available for inspection, during which process plaintiff may identify relevant documents for production. This inspection period may be extended by the court for good cause shown. Defendant shall provide to plaintiff copies or electronic images of the documents identified by plaintiff pursuant to this provision within such time as is agreed to by the parties; barring such agreement, the parties shall each file with the court their proposed schedule for the production of such copies or images, with an explanation in support thereof.

(d) At such time as the inactive records identified by plaintiff have been copied or imaged by defendant, DOI may move those records from OTR and the Jicarilla Agency in accordance with its normal procedures and protocols for the movement of Indian trust records. In addition, DOI may move any boxes designated by plaintiff from OTR or the Jicarilla Agency

that plaintiff has not reviewed within three months from the date on which DOI made those boxes available for plaintiff's inspection. DOI may, at any time, move boxes that have not been designated for inspection, according to normal procedures and protocols for the movement of Indian trust records. Nothing herein prevents plaintiff from also seeking to inspect relevant records from OTR, the BIA Southwest Regional Office, or the Jicarilla Agency in whatever location they may be found in the future.

3. **Indexation.**

(a). The parties shall meet and confer, as soon as practicable, and no later than April 19, 2004, to develop a plan for indexing documents, data and tangible things reasonably anticipated to be subject to discovery in this case. The resulting plan shall be submitted to this court as a proposed order under RCFC 16(e).

(b) . The parties should attempt to reach agreement on all issues regarding the indexation of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(i) the extent of the indexation obligation, identifying the types of material to be indexed, the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;
(ii) the identification of persons responsible for carrying out the indexation;
(iii) whether indexation will require suspending or modifying any routine processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;
(iv) the timing of the indexation process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;
(v) the methods to index any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;
(vi) the anticipated costs of indexation and ways to reduce or share these costs; and
(vii) a mechanism to review and modify the indexation obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

(c) If, after conferring to develop an indexation plan, counsel do not reach agreement on the subjects listed under paragraph 3(b) of this order or on

other material aspects of indexation, the parties shall file with the court, within seven days of the conference, a statement of the unresolved issues together with each party's proposal for their resolution of the issues.

4. **Compliance.** Defendant shall establish a mechanism for monitoring compliance with this order and, on or before April 19, 2004, file a status report with the court describing that mechanism. Defendant's counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (*e.g.*, the destruction or loss of documents).

5. **Definitions.** For purposes of this order:

(a) "Documents, data, and tangible things" is to be interpreted broadly to include writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video; phonographic tape; or digital recordings or transcripts thereof; drafts; jottings; and notes. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, is also included in this definition.

(b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

6. **Further Instructions; Modification.** Either party may apply to the court for further instructions regarding, *inter alia*: (a) defendant's obligation to preserve specific categories of documents, data, or tangible things; (b) any aspect of the inspection or indexation tasks not herein clearly defined; and (c) allocating copying costs and maintaining the confidentiality of information contained in various records. Recognizing that the parties may perceive better ways of

accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. **Sanctions.** Failure to comply with this order may lead to the imposition of sanctions, as described in greater detail in the *Pueblo of Laguna* order, cited above.

8. **Dissemination.** This order shall be distributed by defendant to all relevant agencies, departments, offices, divisions, and individuals.

Francis M. Allegra
Judge

Based on the foregoing, pursuant to RCFC 16(c) and 26(c), as well as this court's inherent power to regulate its proceedings and maintain the integrity of its functions, **IT IS ORDERED**:[15]

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant, its agencies, and its employees must take reasonable steps to preserve every document, data or tangible thing in its possession, custody or control, containing information that is relevant to, or may reasonably lead to the discovery of information relevant to, the subject matter involved in the pending litigation. Plaintiff is reminded that it also has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection.**

(a) The Department of the Interior ("DOI") shall move inactive Pueblo of Laguna records from the BIA Southwest Regional Office to the Office of Trust Records ("OTR"), in Albuquerque, New Mexico, at which location said inactive records shall be made available to plaintiff for purposes of inspection. At least 10 calender days prior to movement of the inactive records, DOI will provide plaintiff with a move plan, which plan shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of custody; and the signature of the official responsible for the move. Compliance with the move plan may be monitored by plaintiff or its representative.

(b) After reviewing the inactive records at OTR and the Southern Pueblos Agency for privileged material, DOI shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) On or before April 2, 2004, DOI shall provide plaintiff with any and all existing indices of inactive records or record boxes located at the OTR, the Southwest Regional Office, or the Southern Pueblos Agency.

(ii) On or before May 3, 2004, plaintiff shall designate the boxes or records listed in the provided indices that plaintiff wishes to review for Pueblo of Laguna trust records.

---

[15] Portions of the provisions that follow are drawn from the sample preservation order contained in the Manual for Complex Litigation § 40.25.

(iii) Within 49 days from the date on which plaintiff designates which boxes at OTR it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at OTR for plaintiff's inspection.

(iv) Within 63 days from the date on which plaintiff designates which boxes at the Southern Pueblos Agency it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at the Southern Pueblos Agency for plaintiff's inspection.

(c) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from DOI that the designated record has become available for inspection, during which process plaintiff may identify relevant documents for production. This inspection period may be extended by the court for good cause shown. Defendant shall provide to plaintiff copies or electronic images of the documents identified by plaintiff pursuant to this provision within such time as is agreed to by the parties; barring such agreement, the parties shall each file with the court their proposed schedule for the production of such copies or images, with an explanation in support thereof.

(d) At such time as the inactive records identified by plaintiff have been copied or imaged by defendant, DOI may move those records from OTR and the Southern Pueblos Agency in accordance with its normal procedures and protocols for the movement of Indian trust records. In addition, DOI may move any boxes designated by plaintiff from OTR or the Southern Pueblos Agency that plaintiff has not reviewed within three months from the date on which DOI made those boxes available for plaintiff's inspection. DOI may, at any time, move boxes that have not been designated for inspection, according to normal procedures and protocols for the movement of Indian trust records. Nothing herein prevents plaintiff from also seeking to inspect relevant records from OTR, the BIA Southwest Regional Office, or the Southern Pueblos Agency in whatever location they may be found in the future.

3. **Indexation.**

(a) The parties shall meet and confer, as soon as practicable, and no later than April 19, 2004, to develop a plan for indexing documents, data and tangible things reasonably anticipated to be subject to discovery in this case. The resulting plan shall be submitted to this court as a proposed order under RCFC 16(e).

(b) The parties should attempt to reach agreement on all issues regarding the indexation of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(i) the extent of the indexation obligation, identifying the types of material to be indexed, the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;
(ii) the identification of persons responsible for carrying out the indexation;
(iii) whether indexation will require suspending or modifying any routine processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;
(iv) the timing of the indexation process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;
(v) the methods to index any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;
(vi) the anticipated costs of indexation and ways to reduce or share these costs; and
(vii) a mechanism to review and modify the indexation obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

(c) If, after conferring to develop an indexation plan, counsel do not reach agreement on the subjects listed under paragraph 3(b) of this order or on other material aspects of indexation, the parties shall file with the court, within seven days of the conference, a statement of the unresolved issues together with each party's proposal for their resolution of the issues

4. **Compliance.** Defendant shall establish a mechanism for monitoring compliance with this order and, on or before April 19, 2004, file a status report with the court describing that mechanism. Defendant's counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (*e.g.*, the destruction or loss of documents).

5. **Definitions.** For purposes of this order:

(a) "Documents, data, and tangible things" is to be interpreted broadly to include writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail;

telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video; phonographic tape; or digital recordings or transcripts thereof; drafts; jottings; and notes. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, is also included in this definition.

(b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

6. **Further Instructions; Modification.** Either party may apply to the court for further instructions regarding, *inter alia*: (a) defendant's obligation to preserve specific categories of documents, data, or tangible things; (b) any aspect of the inspection or indexation tasks not herein clearly defined; and (c) allocating copying costs and maintaining the confidentiality of information contained in various records. Recognizing that the parties may perceive better ways of accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. **Sanctions.** Failure to comply with this order may lead to the imposition of sanctions, as described in greater detail above.

8. **Dissemination.** This order shall be distributed by defendant to all relevant agencies, departments, offices, divisions, and individuals.

Francis M. Allegra
Judge

# In The United States Court of Federal Claims

No. 06-945L

(Filed: September 10, 2007)

NAVAJO NATION
f.k.a. NAVAJO TRIBE OF INDIANS,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**ORDER**

This matter comes before the court on plaintiff's Motion for Entry of Record Retention Order. Pursuant to RCFC 26(c) as well as the court's inherent power to regulate its proceedings and maintain the integrity of its functions, *see Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135-137 (2004), the court hereby **ORDERS** as follows:

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant and its departments, agencies, employees, agents, and contractors must take reasonable steps to preserve every document, datum, or tangible thing in its possession, custody, or control containing information that is relevant to, or is reasonably calculated to lead to the discovery of admissible evidence relevant to, the subject matter involved in the pending litigation ("Relevant Records"). Plaintiff is reminded that it also has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection and Production.**

   (a) Defendant shall move Relevant Records that, as of the date of this order, are inactive as defined by the Department of Interior ("Interior") Manual Part 303, Chapter 6, and located at the Bureau of Indian Affairs ("BIA") Navajo Regional ("Gallup") Office, the BIA Navajo Regional Realty Office, and the BIA Fort Defiance Agency, and any predecessor offices therefor to the Gallup BIA Warehouse in Gamerco, New Mexico, at which location such records shall be made available to plaintiff for purposes of inspection. At least 10 calendar days

before movement of the records from their present locations to Gamerco, defendant will provide plaintiff with an intermediate move plan or plans, which shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of custody; and the signature of the official responsible for the move. The move process may be monitored by plaintiff or its representative.

(b) After reviewing the above inactive Relevant Records for privileged material, if necessary, defendant shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) Within 35 days after entry of this order, defendant shall provide to plaintiff any and all existing indices and inventories that include inactive Relevant Records or boxes thereof located at the above offices in the most useable form readily available. Defendant shall provide to plaintiff additional or supplemental indices or inventories of inactive Relevant Records within 21 days after the creation or discovery of such indices or inventories.

(ii) Within 35 days after receiving such indices or inventories from defendant or within some other time as agreed to by the parties, plaintiff shall designate boxes or records listed in the provided indices or inventories that plaintiff wishes to review for Relevant Records.

(iii) Within 63 days after the date on which plaintiff designates which boxes of one or more of the above offices it wishes to inspect, defendant will begin to make available, on a rolling basis, the boxes from such office(s) for plaintiff's inspection at the BIA warehouse in Gamerco.

(iv) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from defendant that the designated record has become available for inspection, during which process plaintiff may identify records for production. This inspection period may be extended by agreement of the parties or by the court for good cause shown. At the time of such inspection, defendant shall permit plaintiff to identify or document the condition of records identified by plaintiff for production, including without limitation through the use of audio recorders, digital cameras, or document scanning, provided that no such recordings made by plaintiff shall constitute production of records. Plaintiff's documentation shall be subject to the Protective Order entered by this court on May 11, 2007.

(c) After plaintiff has inspected and identified records for production pursuant to paragraph 2(b) above, defendant may move those records to the American Indian Records Repository ("AIRR") in Lenexa, Kansas, in accordance with defendant's

procedures and protocols for the movement of Indian trust records contained in the Indian Affairs Records Management Manual. After such move(s), defendant shall scan the records identified by plaintiff; code the scanned images at the document level, including data fields as agreed to by the parties; and provide such images and coding to plaintiff within such schedule as agreed to by the parties. For documents originating in media other than paper, defendant shall provide the document in a reasonably usable form, including any form reasonably requested by plaintiff, and also shall provide an opportunity to plaintiff to test or sample such documents upon reasonable request. Defendant shall expedite and prioritize the scanning, coding, and production to plaintiff of identified records.

(d) In accordance with defendant's procedures and protocols for the movement of Indian trust records contained in the Indian Affairs Records Management Manual, defendant may move any boxes that have been either: not designated for inspection within the time period provided for in or agreed to under paragraph 2(b)(ii); or designated but not reviewed by plaintiff within the applicable period provided for under paragraph 2(b)(iv). Nothing herein prevents plaintiff from also seeking to inspect records from the above offices in whatever location they may be found in the future.

(e) Within such schedule as agreed to by the parties, defendant shall input into Interior's Box Inventory Search System ("BISS") data identifying the boxes, files, and documents containing all Relevant Records located as of the date of this order at the AIRR; provide plaintiff access to such BISS database at the Albuquerque office of plaintiff's counsel and the AIRR; and make those records available for plaintiff's inspection at the AIRR. At the time of such inspection, defendant shall permit plaintiff to identify or document the condition of records identified by plaintiff for production, including, without limitation, through the use of audio recorders or digital cameras, provided that no such recordings made by plaintiff shall constitute production of records. Defendant also shall provide to plaintiff all manuals, training materials, and similar documents created by or for Interior which describe the BISS database and its manner of operation and access. Defendant shall provide to plaintiff additional or supplemental indices or inventories for the AIRR that include Relevant Records promptly after the creation of such indices or inventories.

(f) The parties shall meet and confer to discuss schedules and procedures to be used for defendant to make available to plaintiff, for purposes of inspecting active or inactive Relevant Records (determined as of the date of this order) of all of defendant's departments, agencies, offices, employees, agents, and contractors at offices other than those identified in paragraph 2(a) above, as follows:

(i) The parties shall expedite and prioritize inspection of Relevant Records that, as of the date of this order, are inactive and located at: (1) the offices

of the BIA Chinle Agency, the BIA Western Navajo ("Tuba City") Agency, the BIA Eastern Navajo ("Crownpoint") Agency, and the BIA Shiprock Agency, whether inspected at those offices, the BIA Gamerco warehouse, or other mutually agreed locations; (2) the Office of Trust Records ("OTR"), the Office of the Special Trustee ("OST"), and the BIA Land Titles and Records Office ("LTRO"), all located in Albuquerque, New Mexico; or (3) offices of the Department of the Treasury.

(ii) Defendant, after reviewing the records for privileged material, if necessary, shall make the respective record collections available to plaintiff for purposes of inspection and designation. Unless otherwise agreed by the parties, defendant shall provide existing indices or inventories for such records as soon as practicable and make such records available for plaintiff's inspection within 63 days of plaintiff's designation of them.

(iii) Plaintiff shall inspect the records upon receiving notification from defendant that the records have become available for inspection. If plaintiff identifies records for production, defendant shall make arrangements for scanned and coded images, or other data in a reasonably usable form, to be delivered to plaintiff as soon as practicable.

(iv) Unless otherwise agreed by the parties, moves of Relevant Records that are inactive as of the date of this order from the BIA Navajo Agencies identified in paragraph 2(f)(i) above, the OTR, the OST, and the LTRO to locations other than the AIRR shall be subject to the intermediate move plan requirement of section 2(a) above.

(g) The parties shall attempt to reach agreement on all matters related to document inspection and shall coordinate inspection of Relevant Records in a manner that will minimize the disruption of ongoing governmental activities.

3. **Indexation and Inventorying.**

(a) Within 126 days after entry of this order, the parties shall identify all of their respective repositories besides the AIRR and those addressed in section 2(a) above that are reasonably anticipated to be subject to discovery in this case and determine whether indices or inventories exist for each location. The parties also shall have ongoing duties to identify evidence relevant to this case in their respective possession, custody, or control.

(b) Within the same time period or as the parties may agree, the parties shall provide to each other existing indices and inventories for such repositories in the most

useful form readily available, except for indices and inventories previously provided pursuant to paragraph 2 of this Order.

(c) If a party is unable to provide the other with indices or inventories of its repositories containing evidence relevant to this case, then the parties shall meet and confer as soon as practicable about the possibility of using, as may be appropriate, a collection-by-collection approach, including on-site reviews, to address the sufficiency of existing indices or inventories and to discuss whether additional indexation of specific record collections is necessary and the scope, timing, and method of any additional indexation or elaboration of inventories at each location based on the particular facts relating to each repository and record characteristics. The parties shall provide additional or supplemental indices or inventories that include evidence relevant to this case within 21 days after the creation or discovery of such indices or inventories.

(d) The parties shall cooperate in good faith to attempt to reach agreement on all issues regarding the indexation and inventorying of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(i) the extent of the indexation and inventorying obligation, identifying the types of material to be indexed and inventoried, the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;

(ii) the identification of persons responsible for carrying out the indexation or inventorying;

(iii) whether indexation or inventorying will require suspending or modifying any routine processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;

(iv) the timing of the indexation or inventorying process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;

(v) the methods to index or inventory any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;

(vi) the anticipated costs of indexation and inventorying and ways to reduce or share these costs; and

(vii) policies and procedures to review and modify the indexation and inventorying obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

(e) If, after conferring to develop an indexation plan, counsel do not reach agreement on the subjects listed under paragraph 3(d) of this order or on other material aspects of indexation, the parties shall file expeditiously with the court a statement of the unresolved issues together with each party's proposal for their resolution of the issues.

4. **Compliance.** The parties shall establish policies, procedures, and controls for monitoring compliance with this order and, on or before 63 days after entry of this order, file a status report with the court describing those policies, procedures, and controls. The parties' counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (*e.g.*, the destruction or loss of documents).

5. **Definitions.** For purposes of this order:

(a) "Documents, data, and tangible things" is to be interpreted broadly to include, without limitation, writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic tape or digital recordings, or transcripts thereof; drafts; jottings; and notes. The term also includes information that serves to identify, locate, or link documents, data, and tangible things, including, without limitation, file inventories; indices; and metadata.

(b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, mutation, negligent handling, or intentional mishandling of any documents, data, or tangible things, if such action would make that material incomplete or inaccessible.

6. **Further Instructions; Modification.**

(a) If, after counsel confer, unresolved issues remain but require resolution concerning matters arising under this order or other material aspects of preservation, inspection and production, or indexation and inventorying, the parties shall file with the court a statement of the unresolved issues together with each party's proposal for their resolution.

(b) Either party also may apply to the court for further instructions regarding, *inter alia*:

(i) defendant's obligation to preserve specific categories of documents, data, or tangible things;

(ii) any aspect of the inspection or indexation tasks not herein clearly defined; and

(iii) allocating copying costs and maintaining the confidentiality of information contained in various records.

(c) Recognizing that the parties may perceive better ways of accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. **Sanctions.** Failure to comply with this order may lead to the imposition of sanctions. *See Pueblo of Laguna*, 60 Fed. Cl. at 135-137; *United Medical Supply Co., Inc. v. United States*, 77 Fed. Cl. 257 (2007).

8. **Dissemination.** This order shall be distributed by defendant and plaintiff to all relevant agencies, departments, offices, divisions, contractors, and individuals.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 1:06-cv-00899L<br>Judge Francis M. Allegra |

PARTIES' JOINT STIPULATION REGARDING PRESERVATION OF DOCUMENTS, DATA AND TANGIBLE THINGS

WHEREAS, Plaintiff Swinomish Indian Tribal Community ("Plaintiff") has filed this case, alleging that Defendant United States of America ("Defendant") breached its trust duties regarding management of Plaintiff's trust funds and failed to provide a proper accounting of such funds, and requesting various forms of relief, including monetary damages; and

WHEREAS, a preliminary status conference in this case was held on July 6, 2007, during which the Court ordered the parties to confer and to prepare and file a joint status report regarding whether and how they wish to proceed with the entry of a document preservation order in this case; and

WHEREAS, counsel for the parties have conferred regarding this issue on several occasions; and

WHEREAS, the parties agree that maintaining the integrity of all documents, data, and tangible things containing information reasonably anticipated to be subject to discovery in this action is essential to resolving the issues in this case and to satisfying

the parties', and their agencies', employees' and agents', legal obligations with respect to the preservation of potentially relevant evidence;

NOW, THEREFORE, the parties agree as follows:

1. **Obligation to Preserve Relevant Documents.** During the pendency of this litigation (including informal settlement discussions, ADR, and/or any appeals herein), the parties, their agencies, their employees and agents shall take reasonable steps to preserve those documents, data, or tangible things in their possession, custody, or control, containing information that is relevant to, or may reasonably lead to the discovery of information that is relevant to, the subject matter of the pending litigation ("Swinomish documents").

2. **Compliance.** Defendant, in consultation with Plaintiff, shall establish a mechanism concerning on-going compliance with this Joint Stipulation, such as periodic reminders of record retention obligations to be sent to Swinomish document repositories (i.e. BIA Puget Sound Agency, Northwest Regional Office and the Office of Trust Records), and, on or before September 17, 2007, shall confirm in writing, again in consultation with Plaintiff, the parties' understanding of that mechanism. Counsel shall immediately notify opposing counsel if, at any time, they become aware of a violation of Paragraph 1 of this Joint Stipulation (i.e. the destruction or loss of documents, data, and/or tangible things).

3. **Definitions.** For purposes of this Joint Stipulation:

   a. "Documents, data, and tangible things" is to be interpreted broadly to include, without limitation, writings; records; files; contracts; leases;

correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic tape or digital recordings, or transcripts thereof; drafts; jottings; and notes. The term also includes information that serves to identify, locate, or link documents, data, and tangible things, including, without limitation, file inventories; indices; and metadata.

b. "Preserve" is to be interpreted broadly to include, without limitation, taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, migration, theft, or mutation of documents, data, and tangible things, and any negligent or intentional handling that would make material incomplete or inaccessible. The term also includes taking reasonable steps to prevent the relocation of documents, data, and tangible things if such relocation would result in the documents, data, or tangible things no longer being in the possession, custody, or control of the party from whom the documents, data, and tangible things are relocated.

4. **Movement of Documents, Data, and Tangible Things.** On August 6, 2007, the Government represented to Plaintiff's counsel that Defendant does not anticipate any movement or transfer of Swinomish documents from the Department of the Interior within the immediate future. Defendant agrees to provide Plaintiff with written notice at least thirty (30) days prior to the movement or transfer of Swinomish documents from the Puget Sound Agency of the BIA to the American Indian Records Repository ("AIRR"). The Government has also represented that it is determining the location of Swinomish documents in other Department of the Interior facilities. Within thirty (30) days of completion of that investigation, Defendant will meet and confer with Plaintiff concerning its findings with respect to any collections of Swinomish documents which are found in other Interior facilities and will provide Plaintiff any existing finding aids or indices of such collections in order for Plaintiff to make a determination as to whether or not it wishes to review the records at the facilities. Such review, if any, will be according to the rules and procedures of those facilities in which the records are located. During the meet and confer the parties will also discuss notice to Plaintiff of collections of Swinomish documents should any of those collections be considered for movement or transfer to AIRR.

5. **Dispute Resolution.** If a party desires clarification of any issue(s) related to the parties' obligations pursuant to, or compliance with, this Joint Stipulation, or believes that the opposing party has violated any term of this Joint Stipulation, the party shall notify the opposing party in writing and state the issue(s) requiring clarification or the grounds upon which the party has formed such belief. As soon

as practicable after receiving such written notification, the parties shall meet and confer in an attempt to clarify the issue(s) in a mutually agreeable manner or resolve the dispute. If the parties cannot clarify the issue(s) in a mutually agreeable manner or do not resolve the dispute within a period of 20 days, either party may file a motion with the Court seeking a ruling regarding the parties' obligations under, and compliance with, this Joint Stipulation.

Agreed to and respectfully submitted for Court approval this 8th day of August, 2007,

s/
STEPHEN T. LeCUYER

Swinomish Indian Tribal Community
P.O. Box 817

La Conner, WA 98257
Tel: (360) 466-7248
Fax: (360) 466-5309

Attorney of Record for Plaintiff

RONALD J. TENPAS
Acting Assistant Attorney General

*s/ by SLeCuyer per phone authorization*
ROBERT W. RODRIGUES
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 353-8839
Fax: (202) 353-2021

Attorney of Record for Defendant

OF COUNSEL:

ANTHONY P. HOANG
MARTIN J. LALONDE
JOHN H. MARTIN
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0241
Fax: (202) 353-2021

KENNETH DALTON
United States Department of the
Interior
Office of the Solicitor
Washington, D.C. 20240

RACHEL M. HOWARD
United States Department of the
Treasury
Financial Management Service
Office of the Chief Counsel
Washington, D.C. 20227

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 1:06-cv-00899L<br>Judge Francis M. Allegra |

ORDER APPROVING PARTIES' JOINT STIPULATION REGARDING PRESERVATION OF DOCUMENTS, DATA AND TANGIBLE THINGS

This matter comes before the Court upon the Parties' Joint Stipulation Regarding Preservation of Documents, Data, and Tangible Things. The Court has reviewed the Joint Stipulation and is fully advised in the premises. Upon the foregoing, the Parties' Joint Stipulation Regarding Preservation of Documents, Data, and Tangible Things is hereby approved and adopted as an Order of the Court this _____ day of ________, 2007.

FRANCIS M. ALLEGRA
U.S. Court of Federal Claims

# In the United States Court of Federal Claims

No. 06-900L

Filed October 1, 2007

************************************

ROUND VALLEY INDIAN TRIBES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

************************************

**PROTECTIVE ORDER**

Pursuant to Rule 26(c) of the Rules of the Court of Federal Claims (RCFC), as well as the Court's inherent power to regulate its proceedings and maintain the integrity of its functions, the Court hereby issues the following Order:

**1. Obligation to Preserve Certain Documents, Data, and Tangible Things**

During the pendency of this litigation (including informal settlement discussions, ADR, and/or any appeals herein), the parties, as well as their agencies, their employees, and their agents, shall take reasonable steps to preserve those documents, data, or tangible things that are in their possession, custody, or control, and that contain information that is relevant to, or may reasonably lead to the discovery of information that is relevant to, the subject matter of the pending litigation (including claims and defenses), as that subject matter is set forth in the Complaint and any amendments thereof and the Answer to such complaint and any amendments thereof. This Order does not impose an obligation on the parties to retain duplicate copies of the documents, data, or tangible things that are subject to the Order. Additionally, nothing in this Order Supplants the discovery obligations under the RCFC.

**2. Mechanism for Ensuring Compliance With This Order**

Defendant, in consultation with Plaintiff, shall establish a mechanism for ensuring on-going compliance with this Order, such as periodic reminders of record retention obligations to be sent to appropriate document repositories by a date to be determined by the Court and then every six months thereafter for the pendency of this case. Defendant shall file a report setting forth its compliance mechanism, within 60 days of the date of this Order. The compliance mechanism shall include the

parties' specification of the subject matters at issue in this litigation and the documents, data, or tangible things that the parties reasonably anticipate to be subject to discovery in this case and to this Order. Counsel shall notify the Court and opposing counsel, as soon as is reasonably possible, if, at any time, they become aware of a violation of Paragraph 1 of this Order (i.e., the destruction or loss of certain documents, data, and/or tangible things).

**3. Definitions**

For purposes of this Order, the following terms are to defined as follows:

(a) "Documents, data, and tangible things" shall be interpreted to consist of writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic mail (e-mail) ; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media, such as tapes, disks, and cards; printouts; document image files; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic or digital recordings, or transcripts thereof; and circulated drafts. The term also shall include information that serves to identify, locate, or link documents, data, and tangible things, such as file inventories and indices.

(b) "Preserve" shall be interpreted to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery in this case as related to the subject matters defined by the Parties under paragraph 2 above. "Preserve" includes the parties taking reasonable steps to prevent the partial or full destruction, alteration, deletion, shredding, incineration, wiping, theft, or mutation of documents, data, and tangible things, and any negligent or intentional handling that would make material incomplete or inaccessible.

**4. Movement(s) or Transfer(s) of Certain Documents, Data, and Tangible Things**

In the event that Defendant anticipates moving or transferring trust documents relating to Plaintiff from the Central California Agency and Pacific Regional Office of the Bureau of Indian Affairs (BIA) to the American Indian Records Repository (AIRR), Defendant shall provide Plaintiff with notice of such document movement at least 20 days in advance of the movement. Such written advance notice shall include a copy of any move plans and box inventories produced pursuant to regulations and procedures governing movement of trust documents.

**5. Dispute Resolution**

If a party desires clarification of any issue(s) related to the parties' obligations pursuant to, or compliance with, this Order, or believes that the opposing party has violated any term of this Order, the party shall notify the opposing party in writing and state the issue(s) requiring clarification or the grounds upon which the party has formed such belief. As soon as practicable after receiving such written notification, the parties shall meet and confer in an attempt to clarify the issue(s) in a

mutually agreeable manner or resolve the dispute. If the parties cannot clarify the issue(s) in a mutually agreeable manner or do not resolve the dispute, within a period of 20 days either party may file a motion with the Court seeking a ruling regarding the parties' obligations under, and compliance with, this Order.

**6. Further Instructions, Clarification, or Modification of This Order**

Each party may apply to the Court, at any time, for further instructions, clarification, or modification of this Order, regarding, inter alia, their obligations to preserve specific categories of documents, data, and tangible things covered by the Order. The parties are encouraged to confer among themselves and to make a joint proposal or submission to the Court, wherever appropriate or possible.

**IT IS SO ORDERED.**

<u>**s/Susan G. Braden**</u>
**SUSAN G. BRADEN**
**Judge**

# DECLARATION OF

# MICHAEL A. BIANCO

# EXHIBIT C

# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240

## FAX TRANSMISSION NOTICE

| | | |
|---|---|---|
| **TO:** | Office of the Secretary, Sharon Witt/Pam Quallich/Don Boswell | **FAX:** (202) 208-6956 |
| | Office of the Solicitor, Christina Bartlett | (202) 208-5584 |
| | Office of the Special Trustee for American Indians, Rick Fielitz | (505) 816-1319 |
| | Office of the Inspector General[1] | (703) 487-5406 |
| | Office of Assistant Secretary – Indian Affairs | (202) 208-5320 |
| | Bureau of Indian Affairs, Bob Harnage | (202) 208-6334 |
| | Office of Assistant Secretary – Policy, Management, and Budget[2] | (202) 208-1873 |
| | Office of Hearings and Appeals, Charles Breece | (703) 235-9014 |
| | Office of Assistant Secretary – Land and Minerals, Rich Cardinale | (202) 208-3619 |
| | Minerals Management Service, Nola Freeman/Linda Lautigar/Brian MacCauley | (303) 231-3362 |
| | Office of Surface Mining, Doug Wink | (202) 219-3092 |
| | Bureau of Land Management, Scott McPherson | (202) 208-5242 |
| | Office of Assistant Secretary – Fish, Wildlife, and Parks[3] | (202) 208-4684 |
| | Fish and Wildlife Service,[4] | (202) 208-6817 |
| | Office of Assistant Secretary – Water and Science, Amy Holley | (202) 208-3324 |
| | Bureau of Reclamation, Dick Ives/ Roy Wingate/Gary Palmeter | (202) 513-0318 |
| | U.S. Geological Survey, Carol Wippich | (703) 648-7199 |

**FROM:** Indian Tribal Trust Litigation Office **FAX:** (202) 219-0559
Paul Smyth
Elisabeth Brandon
Thomas Bartman
Michael Bianco
Holly Clement
Gladys Cojocari
Kenneth Dalton
Shani Walker

**DATE:** December 7, 2007

**RE:** Report of Conference Call on Compliance with Records Retention Orders in Tribal Trust Cases

---

Thank you for taking the time to participate in the December 6, 2007 teleconference with Tribal Trust attorneys of the Indian Trust Litigation Office ("ITLO") to discuss the designation of a Records Retention Order (RRO) Compliance Coordinator (CC) for your respective Offices and/or Bureaus. The above-named contacts all participated in the teleconference. Please let this letter serve as a confirmation and summary of that teleconference, including the measures that were agreed upon in order to demonstrate our initial

1 Lori Vassar, Associate General Counsel, was the last point of contact for this Office. OIG did not participate in this call.
2 Barbara Diehl was the last point of contact. PMB did not participate in this call.
3 Office of the Assist Sec. for Fish & Wildlife did not participate. Janet Naughton has since been designated as the RRO CC.
4 Fish & Wildlife did not participate; however, Margaret Hopkins called us immediately afterwards.

compliance steps for these RROs. As promised in our teleconference, I have attached the entire Pueblo of Laguna Record Retention Order, for your review and use.

After our initial roll call, Elisabeth Brandon began by explaining the events that have led to the entry of several orders in 2007. Unrelated to the entry of RROs in 2004 by Judge Allegra in the *Jicarilla* and *Laguna* cases, the Department for some time now has, as a matter of policy, directed that all Indian trust records be preserved permanently. Despite the fact that we believe our prior records retention mechanisms have been effective, six additional RROs were entered this year, stemming from what we informally refer to as the "Treasury Incident." In approximately February of this year, a contractor for the Treasury Department inadvertently misapplied Treasury's long-standing (and comparable) document preservation instructions and destroyed some Government materials, some of which are said to have included documents related to Interior. In response, Judges Braden and Allegra then began entering preservation orders in other tribal trust cases before them. Thus far, none of the other Court of Federal Claims judges have done so (nor have any District Court judges). The Department of Justice has asked that the Solicitor's Office work with all Interior offices and bureaus to ensure we have mechanisms in place to periodically document our ongoing records preservation/retention policies and practices and also to begin more formally to document both our retention policies and the mechanisms by which we ensure periodic reminders of these policies plus the prompt reporting of all suspected violations of any of the RROs.

In response, we have asked each of your bureaus and offices to identify a person or persons to act as your bureau- and office-wide RRO Compliance Coordinator(s). As explained to some of you over the past few weeks, this person should hold a position within your organization that will enable him or her to be able to marshal information from across the nationwide operations of your office or bureau and to periodically execute compliance reporting declarations. These information-gathering and declaration-writing activities may sometimes be needed on very short (24 or 48-hour) notice, although the precise reporting requirements of the RROs will vary. The RRO will work as the central point of contact between attorneys here at ITLO and all affected levels of your office or bureau, to help to ensure that compliance (and reporting) mechanisms are in place and are continuously monitored, as appropriate.

The scope of the information covered by the RROs is very broad. All documents, data and tangible things that refer or relate to the management of or accounting for any Indian trust assets, whether monetary or non-monetary, are covered by these RROs. They also are covered, as you know, by our preexisting Departmental preservation policies and by the March 2007 memorandum issued by Deputy Solicitor Larry Jensen that reminded all offices and bureaus of these policies. [5] (The list of tribal cases attached to the Jensen Memorandum represents the current list of tribal trust cases; however, please note that the *Nez Perce* case is styled as a class action, and if certified as a class action will add another 200 or so tribes to this list.)

We envision the initial steps to be taken after this call as threefold. First, it will be necessary to identify all locations within your respective offices and bureaus, including related facilities such as Federal Records Center locations, that hold materials still subject to your custody and control, where any "Relevant Information" as defined in a particular RRO may reside.[6] Upon receipt of this letter, you should pose this

5 "Documents, data, and tangible things" that must be preserved include documents, data, and tangible things "that contain information that is relevant to, or may reasonably lead to the discovery of information that is relevant to the subject matter of the pending litigation. . . ." *E.g.*, Protective Order entered in *Quechan Tribe of the Fort Yuma Indian Reservation v. United States,* No. 06-888L (Ct. Fed. Cl. Oct. 25, 2007). Please consider "information relevant to the subject matter of the pending litigation" to include, very broadly, any information about those tribes' assets, whether trust funds or other types of assets. To simplify the compliance challenge, we also suggest that a bureau not distinguish between tribal and allottee lands but preserve all land and resource-related information attributable to a tribe or its respective members.

6 The term "Relevant Information is not specifically defined in the RROs, as referenced in the teleconference by Ms. Brandon. However,

question to all of those locations, and request affirmative as well as negative responses be given no later than a date certain. We recommend soliciting this information for response no later than December 19, 2007. Please let us know if you would like our assistance in drafting these inquiries to all locations.

As an example:

> In support of this Bureau's compliance with the Record Retention Order (RRO)entered in a case brought by the Kaw Tribe, please consider and review all files in your office to determine whether they contain information relating to assets (either monetary or non-monetary, such as land or natural resources) of the Kaw Tribe. Documents and information relating to the Kaw Tribe are subject to the special protective measures required by the RRO. By December 19, 2007, please notify the undersigned (1) whether your office does hold such documents or information or not. If it does have such information, (2) the name of a person your office has identified as a Records Retention Order Compliance Coordinator to safeguard these documents, and (3) provide a brief description of the nature and volume of documents.

The second of these initial steps will be to distribute copies of all the RROs to all employees, contractors and volunteers who could come into contact with the protected information at any of the locations that respond affirmatively to the first-step inquiry. The third step, which we ask that you begin working on upon receipt of this letter, will be to designate persons at all appropriate locations who will assist in documenting, for example, the distribution of RROs to people at their locations and who will be conduits for information to and from the RRO CC (including but not limited to reports of all suspected violations of any RRO).

As we have learned from the compliance filings we have made thus far, there are two offices and bureaus that we know will have Relevant Information, and that the Department of Justice has indicated may expect to be asked to prepare recurrent compliance declarations. Those two are the Office of the Special Trustee for American Indians ("OST") and the Bureau of Indian Affairs ("BIA"). OST has already provided ITLO with a draft document containing its preliminary thoughts on possible steps to design and implement procedures that will be effective for follow-up and monitoring of compliance. As explained by OST's Rick Fielitz, OST accesses a data base they already have put together and they have a policy that lays out various compliance steps: supervisors distribute the RROs to employees and contractors at meetings; retain sign-in sheets documenting which people received the RROs on which dates; process check-in sheets for new employees and exiting employees? All OST employees also sign an affidavit that they will not destroy Relevant Information. Each office under OST will also assign a Records Point of Contact for these RROs.

Doug Wick explained that OSM also has a policy for handling these types of directives. OSM issues specific litigation hold directives and has also distributed the Jensen Memorandum throughout OSM. OSM also has set up electronic mailboxes for delivery and indefinite retention of emails relating to these holds or to other similarly-designated matters. OSM limits retrieval access and works with attorneys from the Solicitor's Office when it becomes appropriate to, for example, produce such emails in response to discovery requests.

Roy Wingate stated that the Bureau of Reclamation treats all records as permanent, and also has pre-existing litigation holds in place that include Native American materials. BOR's CIO has advised all employees of the filing of trust suits and has repeated the directive to preserve Native American records.

Elisabeth Brandon requested that all other bureaus and offices that have any similar written retention or preservation policies already in place please forward them to us by December 14, 2007.

---

footnote 4 (above), and the associated discussion represent our understanding of the intended scope of the term.

As further explanation of the RRO issues concerning Electronically Stored Information ("ESI"), Nicky Cojocari explained that she is drafting additional guidance to the CIOs in all offices and bureaus, which will include, for example, reminders of the necessity to back up all ESI and to ensure retention of all emails. In the event of changes that could affect protected information, such as changing software or an operating system platform, it is important to document the reasons for doing so, the provisions made to preserve legacy information, etc. Please let ITLO know of such changes so we can help work on such changes and documentation. Other key requirements that are expected to be part of this additional guidance will include reminders to employees of the necessity to back up voice mail by transcribing or recording it, and to take measures to discourage callers from leaving substantive information on voice mail.

Paul Smyth noted that the ZANTAZ system that has been in use for some email systems within Interior is not the only means by which the Department will back up ESI, either now or in the future. The Department reserves its discretion to make use of whatever systems or measures it determines to be most suitable to achieve these goals. Accordingly, your planning of compliance steps responsive to the RROs should not consider reliance on the ZANTAZ system for preserving emails.

Elisabeth Brandon and Nicky Cojocari confirmed that ITLO aims to send out this related guidance for the OCIOs on or about December 17, 2007. Ms. Brandon explained that ITLO also aims to circulate draft guidance to all RRO CCs that will cover the larger topics being discussed on this call, as well, and stated that we anticipate that each bureau or office RRO CC will have a team that includes records officers, CIO personnel and others as appropriate for that bureau or office to meet its RRO compliance duties. Ms. Brandon further explained that ITLO aims to put this initial draft guidance into final form for all offices and bureaus on or about December 21, 2007. Pam Quallich of the Office of the Secretary asked if circulating that draft by the 17th meant recipient CCs would need to certify every employee in one week, to which Ms. Brandon explained that our goal is to have begun the steps necessary to complete all three of these initial measures, by December 21.

ITLO expects to provide progress reports to the Court on these matters, first in the compliance reports that are due between December 20 and 26.

Susan Williett of BIA asked about the nature of the complaints, and what the Tribes' claims are and whether it would be necessary to read the complaints in order to know how to comply with the RROs. ITLO explained that Relevant Information is construed very broadly and that it refers to management of or accounting for Indian trust assets. Interior's preexisting policy, and the Jensen Memorandum, make plain that our preservation requirements apply to every Tribe and Indian group, while the RROs entered to date apply only to those named Tribes.

ITLO then identified the attorneys with RRO cases and their respective phone numbers:

| | | |
|---|---|---|
| Gladys (AKA "Nicky") Cojocari | 208-4326 | Navajo, Jicarilla and Pueblo Laguna |
| Holly Clement | 208-1192 | Navajo, Jicarilla and Pueblo Laguna |
| Thomas Bartman | 208-5000 | Quechan |
| Kenneth Dalton | 208-5986 | Swinomish |
| Shani Walker | 208-3066 | Pawnee Nation and Kaw Nation |
| Mike Bianco | 208-4458 | Round Valley |

Gary Palmeter of the Bureau of Reclamation asked if the Dec. 17 draft was to be sent to the CIOs or the field-level contacts (that is, the person who would be tasked with responding). Ms. Brandon explained that the guidance will be sent to the RRO CCs. ITLO asked all participants on today's call to immediately advise us if they are not the RRO CC for their office or bureau, or if there are any future changes in CC designations.

Carol Wippich of USGS stated that USGS has no records of trust accounts and no oil & gas leases and thus believes it should be exempt from this process. Ms. Brandon responded that, as with the process outlined above for identifying locations with Relevant Information, all Interior offices and bureaus will need in the first instance to make this inquiry of all their locations (including FRCs). In the event that an office or bureau certifies it has no locations containing Relevant Information, that entity may well be excused from participating in the ongoing compliance mechanisms (until and unless it begins to engage in activities that include access to Relevant Information, at some time in the future).

Douglas Wink of OSM asked about whether any of these RROs were subject to change. Shani Walker advised that the Kaw Nation RRO is incorrect as the Court had entered the incorrect location of Kaw document collections. ITLO is working with the Department of Justice to draft a motion to modify the existing RRO. Ms. Brandon advised that the RROs should be considered binding in their present form; the question of whether the date by which Kaw compliance reports are due to the Court will run from the date the first RRO was entered or the date it is modified still is unclear. ITLO will advise affected offices if and when an RRO is modified.

Ms. Cojocari also pointed out that the RROs should be distributed not only to persons who have custody of or access to Relevant Information, but to every one at the identified locations, including but not limited to maintenance employees. Rick Fielitz of OST reiterated that every OST employee will have to certify compliance with, and will receive information regarding, the RROs.

Pam Quallich of the Office of the Secretary asked who would provide certifications if and as needed for the Office of the Solicitor. Christina Bartlett, who participated in the call for SOL, will work with OS on this issue, with guidance from ITLO.

The call concluded with Ms. Brandon assuring the office and bureau participants that ITLO will do everything it can to minimize the additional workload these RROs are expected to impose on Interior's offices and bureaus.

# DECLARATION OF

# MICHAEL A. BIANCO

# EXHIBIT D

# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240

## FAX TRANSMISSION NOTICE

| | | |
|---|---|---|
| **TO:** | Office of the Secretary, Sharon Witt/Pam Quallich/Don Boswell | **FAX:** (202) 208-6956 |
| | Office of the Chief Information Officer, Ed McCeney | (202) 208-6084 |
| | Office of the Solicitor, Christina Bartlett | (202) 208-5584 |
| | Office of the Special Trustee for American Indians, Rick Fielitz | (505) 816-1319 |
| | Office of the Inspector General, Lori Vassar | (703) 487-5406 |
| | Office of Assistant Secretary – Indian Affairs, Bob Harnage<br>Bureau of Indian Affairs | (703) 735-4418 6 |
| | Office of Assistant Secretary – Policy, Management, and Budget[1] | (202) 208-1873 |
| | Office of Hearings and Appeals, Charles Breece | (703) 235-9014 |
| | Office of Assistant Secretary – Land and Minerals, Rich Cardinale | (202) 208-3619 |
| | Minerals Management Service, Brian MacCauley | (703) 787-1207 |
| | Office of Surface Mining, Doug Wink | (202) 219-3092 |
| | Bureau of Land Management, Scott MacPherson | (202) 208-5242 |
| | Office of Assistant Secretary – Fish, Wildlife, and Parks, Janet Naughton | (202) 208-4684 |
| | Fish and Wildlife Service, Margaret Hopkins | (202) 208-6817 |
| | Office of Assistant Secretary – Water and Science, Amy Holley | (202) 208-3324 |
| | Bureau of Reclamation, Dick Ives/Roy Wingate/Gary Palmeter | (202) 513-0318 |
| | U.S. Geological Survey, Carol Wippich | (703) 648-7199 |

**FROM:** Indian Tribal Trust Litigation Office **FAX:** (202) 219-0559

| | |
|---|---|
| Paul Smyth | Holly Clement |
| Elisabeth Brandon | Gladys Cojocari |
| Thomas Bartman | Kenneth Dalton |
| Michael Bianco | Shani Walker |

**DATE:** December 18, 2007

**RE:** DRAFT Follow-up Guidance to Records Retention Order Compliance Coordinators

---

This draft memorandum is to follow up on the December 7, 2007 Report of Conference Call on Compliance with Records Retention Orders ("RROs") in Tribal Trust Cases ("RRO Call Report"). The RRO Call Report summarized the discussion held on December 6th, including reporting on compliance measures already undertaken by some Interior offices and bureaus. This draft memorandum is the first of two documents contemplated by the Indian Trust Litigation Office ("ITLO") to provide initial guidance for RRO Compliance, and is intended to address general compliance issues applicable under the RROs. (The second document, which is in final review by the Office of the Chief Information Officer ("OCIO"), is drafted specifically to address compliance issues applicable to CIOs.) As promised in the Dec. 6 call, we now request your comments on this draft memorandum. <u>Please provide your comments on or before Friday, Jan. 4, 2008</u>.

---

1 Barbara Diehl was our last point of contact at PMB.

As discussed on the Dec, 6th call, Department of Interior ("Interior") policy already requires the preservation of Indian Fiduciary Trust Records, as set forth in Part 303, Chapter 6 of the Departmental Manual. The Appendices to this chapter of the Departmental Manual contain decision trees *specific to each Office or Bureau* to determine if a record is an Indian Fiduciary Trust Record. All Indian Fiduciary Trust Records, including Electronically Stored Information ("ESI"), should be considered Relevant Information for the purposes of compliance with these RROs, as well as for purposes of existing Interior records preservation policy.

As you know, each office and bureau is required to identify, inventory, schedule and maintain Indian Fiduciary Trust Records in accordance with the retention schedules set forth in 16 Bureau of Indian Affairs Manual (BIAM), "and/or with applicable unique bureau records schedules for Indian Fiduciary Trust Records." 303 DM 6, § 6.5 (C). We therefore think it likely that your bureau or office may have existing policies regarding the maintenance and preservation of Indian Fiduciary Trust Records. These existing policies would be a logical starting place to begin the development of appropriate policies and procedures for compliance with the RROs. (Some offices and bureaus refer to this work as development of a Compliance Action Plan ("CAP"))

Appropriate compliance mechanisms for each office or bureau may differ according to the characteristics of that office or bureau, including among other things, its functions, the media in use, and the roles of the users. However, the CAP must satisfy the Court that its Orders have been distributed and are being obeyed. ITLO again recommends that all RRO CCs ensure that their office or bureau takes, at a minimum, the following three steps:

1. If you have not already done so, send an inquiry this week to all locations within your office or bureau to determine whether or not each has Relevant Information (asking for both affirmative and negative responses and specify a reasonable date certain for responses);

2. Upon receipt of those responses, immediately distribute the RROs to all staff members, including employees, contractors, volunteers and interns, who have access to Relevant Information at any of the locations responding affirmatively to the inquiry made in step 1, above (to the extent that these RROs have not been previously distributed); and

3. Task at least one individual as Point of Contact ("POC") at each affirmatively-responding location (as determined above) to document the distribution of RROs at that location, to monitor compliance issues, and to serve as a conduit of information to and from the RRO CC. Direct all staff members to immediately report any incidents of suspected destruction or loss of Relevant Information to this individual POC, who in turn must immediately communicate it to the RRO CC and to ITLO.

In addition to these first three steps (discussed in the Dec. 7th Call Report), please also do the following:

4. Please provide us, as soon as possible, with copies of all your existing policies and procedures, so we may work with you to make changes as appropriate to meet these RRO compliance requirements (and also to educate the Courts and our colleagues at DOJ about the strong document preservation measures already in place at Interior).

5. Inform all staff members (whether or not they presently are working at a location that is determined to have Relevant Information – since they could be working at such locations in future) that every individual is personally accountable to the Court and could be subject to sanctions for even accidental destruction or loss of Relevant Information. You might consider making such destruction or loss a basis for adverse personnel action, as well.

6. Back up Relevant Information in the form of ESI, either through automatic backups for ESI resident on computer systems, or downloading information on portable media onto systems that are automatically backed up.

7. Remind all staff members that voicemails that contain Relevant Information must be permanently recorded or transcribed, along with key information such as the date and time of the call and the name of the caller and the recipient. Accordingly, the use of voicemail to transmit substantive information, particularly relating to Indian trust litigation or fiduciary trust matters, should be discouraged.[2]

8. Set up a system to remind staff members of their compliance obligations at appropriate intervals (at least quarterly). Maintain permanent records of those reminders, to be made available to ITLO upon request.

9. Make certain that RRO CCs as well as all senior managers know who to contact at ITLO if a question or problem concerning RRO compliance arises.

Other measures which some offices and bureaus have elected to adopt in their CAPs include:

- setting up electronic mailboxes to collect responses as to whether locations have Relevant Information and to preserve relevant e-mails;
- including information about the RROs and general records retention policy in new employee orientation and periodic employee retraining;
- asking departing employees to certify they have not destroyed any Relevant Information, in exit interviews;
- periodically putting RRO compliance on the agendas of staff meetings and/or periodic teleconferences as an item for discussion and questions.

To quote an appropriate witticism, "an action plan is not static." Please work with us to identify those compliance measures (or CAPs) that you see as appropriate for your office or bureau; these should be measures that your senior managers agree are *sustainable* over the long term. Please then advise us on what changes you believe would further these compliance objectives, whether by designating specific personnel to carry out specific tasks; adding or modifying them on the basis of the collective experience of your office or bureau; or otherwise. Remember that, because of the need for periodic reports to the Court on compliance with these RROs, ITLO periodically will request documentation of all steps taken to demonstrate compliance. We therefore ask that RRO CCs retain all such compliance documentation, permanently.

If you have any questions about the contents of this draft memorandum or would like to discuss the components of your office or bureau CAP, please do not hesitate to contact ITLO. The designated central coordinator for such questions at ITLO is Gladys Cojocari (202-208-4326). In her absence, any of the other ITLO staff attorneys can help you. (Please see the December 7 Call Report for their names and telephone numbers.)

Thank you.

2 See Memo from the Deputy Secretary, April 6, 2004, confirming an earlier memorandum by Lawrence Jensen, Counselor to the Solicitor.