IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROUND VALLEY INDIAN TRIBES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-cv-00900L |
| | ) | Judge Susan G. Braden |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO SCHEDULE A HEARING DATE, TO CLARIFY NATURE OF HEARING, AND TO SCHEDULE BRIEFING ON PLAINTIFF'S MOTION TO COMPEL IN ADVANCE OF THE HEARING**

Defendant United States hereby responds to the Motion to Schedule a Hearing Date for July 18, 2008, to Clarify Nature of Hearing, and to Schedule Briefing on Plaintiff's Motion to Compel in Advance of the Hearing (Pl. Mtn.) (Dkt. 37) filed by Plaintiff Round Valley Indian Tribes ("Tribe") on May 30, 2008.

Plaintiff seeks a hearing on a motion to compel that has not yet been filed with the Court and urges the Court to limit the scope of the hearing to the issues that Plaintiff will raise in that motion when it is filed. Pl. Mtn. at pp. 1-3. Plaintiff states that the motion to compel will address concerns that Plaintiff raised with the Court during status conferences held on May 12 and 22, 2008, challenging the sufficiency of responses that Defendant provided to Plaintiff in the form of search results identifying documents stored at the American Indian Records Repository ("AIRR") in response to Plaintiff's Requests for Production of Documents. *Id*. at 1, 3-4.

Plaintiff has not met its burden of establishing a factual or legal basis for seeking the relief that it has requested from this Court. Plaintiff's request for a hearing on a motion to compel that is

not yet before the Court[1] is premature and, in any event, lacks a factual or legal basis. Plaintiff's request, in the alternative, that the Court "hold a hearing on the AIRR outside the context of the Tribe's case if the Tribe's discovery issues at the AIRR can be resolved in advance of the hearing," (*Id*. at 4) also lacks factual or legal basis. Plaintiff cannot request relief or schedule proceedings outside of the context of this case or the issues and claims presented in the case. For the reasons stated here, the Court should deny Plaintiff's motion and decline to hold a hearing about the AIRR.

## I. Relevant Background

### A. Plaintiff's Document Requests

Plaintiff has served three sets of Requests for Production of Documents ("RPDs") seeking documents relating to a multitude of assets and income-generating sources held in trust for the Tribe. Plaintiff sought, for example, all leases, permits for activities, timber sales contracts, or easements relating to Tribal trust lands or Allotments in which the Tribe holds a legal interest that were or are in effect during the period FY 1973 to present, and any amendments or modifications of such documents (RPDs #1-8); any other document that was or is in effect during FY 1973-present that produced, continues to produce, or was intended to produce monetary revenues for the Tribe (RPD #9); "any appraisals or similar valuations that relate to any documents" produced under RPDs #1-9 (RPD #10); documents showing payment history for all "source documents" (*i.e.*, leases, permits, timber sale contracts, easement agreements, right-of-way agreements, and land sales contracts) (RPD #12); "all documents relating to" investment decisions for the Tribe's accounts (RPD # 15); all documents containing government policies on late payments "relating to" source documents

---

[1] The present motion is not intended to be a response to Plaintiff's yet-unfiled motion to compel. If Plaintiff does, indeed, file a motion to compel the production of documents, Defendant intends to file a full opposition.

(RPD #22); all source document renewals, extensions, cancellations, and terminations that occurred from FY 1973 to present (RPD #26); and "any other documents" that relate to such source documents (RPD #27); and documents that "relate to sales" of the Tribe's assets that occurred between FY 1973 to present (RPD #29).

**B. Defendant's Initial Response**

On May 16, 2008, Defendant provided Plaintiff with a digital video disc ("DVD") containing the "Box Indexing Search System" ("BISS") query results in a searchable format. The BISS query results were provided in a table format with multiple categories of descriptive information, such as Box Title, File Title, File Type, Agency Code, Agency Name, Document Title, and Document Type, among others. Following production of the DVD, Defendant conducted two sessions with Plaintiff's counsel and other of Plaintiff's designees to review the utility of the information provided on the DVD and explain how the BISS query results can be reviewed, searched and sorted to isolate materials of particular interest. Defendant also extended a standing offer to conduct any further sessions, by telephone or in person, to further explain and provide step-by-step examples and tutorials on the information provided in the BISS results and how to use it to optimal advantage to isolate materials of particular interest.

**1. American Indian Records Repository**

As Defendant has advised Plaintiff, some of the documents that are responsive or potentially responsive to Plaintiff's document requests are located at AIRR, a state of the art underground archival document storage facility that is created in conformance with the requirements of the National Archives and Records Administration ("NARA"). *See Declaration of Ethel Abeita*, Director of the Office of Trust Records ("Abeita Dec.") (Ex. 2) and informational pamphlet entitled

"OTR and AIRR" ("*AIRR Pamphlet*") (Attachment A to Ex. 2); *see also* excerpts from testimony of Kathy Ramirez, an employee of the Office of Historical Trust Accounting ("OHTA") who works on site at the AIRR, from *Cobell v. Kempthorne*, Civ.No. 96-1285 (Oct. 11, 2007) 365:12-395:1[2/] ("*Cobell* Trans.") (Ex. 3); Defendant's Proposed Findings of Fact and Conclusions of Law Following the Evidentiary Hearing filed in *Cobell v. Kempthorne,* Civ. Action No. 96-1285 (Nov. 30, 2007) ¶ ¶ 147-167 (Ex. 4).

The AIRR is under the control of the Office of Trust Records ("OTR") of the Office of Special Trustee for American Indians of the Department of Interior ("DOI" or "Interior"). *Cobell* Trans. at 367 ("There are two Interior offices there at the AIRR. One is the Office of Trust Records, and they're responsible for the trust records for Indian affairs, and they're the ones who are managing the AIRR.").[3/] Pursuant to Interior Department policies governing the storage of inactive Indian records, Interior relocated and centralized the storage of inactive records of the Bureau of Indian Affairs ("BIA") and the Office of the Special Trustee ("OST") from various FRCs and other Interior facilities to the AIRR. *See AIRR Pamphlet*. Under Interior Department policies, as BIA, OST, and other Interior Department offices retire Indian trust records, those trust records are shipped to the AIRR for permanent storage. *Id.*

---

[2/] Defendant has attached only the relevant portions of Ms. Ramirez's testimony. Defendant is willing to file the entire transcript of the October 2007 accounting trial in the *Cobell* litigation, from which the relevant excerpts of Ms. Ramirez's testimony are drawn, if the Court deems it appropriate or useful.

[3/] Ms. Ramirez testified about the roles of the accounting and the imaging firms located at the AIRR. *See, e.g.*, Ramirez Trans. at 367 ("My office, Historical Trust Accounting, needs these records to do this historical accounting. So we have sublet space from them to be there in that facility, so that we can search these records to do the historical accounting. So we have two contract firms that are there. One is an accounting firm, and one is an imaging and coding firm.").

Interior enters information on the files stored at the AIRR into a database referred to as the BISS, an index to the file level of the contents of the boxes of inactive records at the AIRR. *Cobell* Trans. 373:2-7. Interior and its contractors use the BISS to search for and identify the boxes that may contain records the researchers seek. *Id.* OTR maintains and continues to update the BISS as new records arrive. *Id.* at 373, 377-79; Abieta Dec., ¶ 3.

Using the BISS, a researcher can perform customized searches to identify boxes containing or likely to contain particular records. *Id.* at 381. Judge Robertson's recent findings in the *Cobell v. Kempthorn* litigation describe how Interior and its contractors

> use the BISS system to identify records that will be potentially useful in conducting historical accounting work . . . After identifying potentially relevant boxes on the BISS, these "searchers" submit requests to NARA, and NARA delivers the requested boxes to OHTA's searchers.

*Cobell,* 532 F.Supp. 37, 54-56 (D.D.C. 2008) (Ex. 5).[4/] While testifying in *Cobell,* Ms. Ramirez offered an example of how the BISS search process works:

> If our office has assigned a particular accounting firm to reconcile certain transactions or certain accounts, when that accounting firm looks at this one transaction, like a posting into someone's account for $50, and it's [a] plus, so it's a collection, the accounting firm knows from the experience and training that we've given them, that you need to find either the bill for collection or the deposit ticket or all of that, and then even further, earlier in the process you need to find the lease, because you want to ensure that it was suppose – it is $50 that you were supposed to collect and not $80. So that accounting firm . . . knows

[4/] With respect to the Court's inquiry regarding a sample of the BISS search results provided to Plaintiff, the BISS search results are contained on a DVD, as noted above. The results contain confidential information which would require Defendant to file the BISS search results under seal. Defendant is willing to file a DVD containing the BISS query results under seal if the Court deems that appropriate. Alternatively, Defendant is willing to submit a DVD containing the BISS query results provided to Plaintiff to the Court for *in camera* review, if the Court deems that appropriate. Defendant could possibly provide the Court with a redacted version of the BISS report sent to Plaintiff, but performing the redactions would be time consuming and would result in a product that is substantially less useful or informative than an unredacted version.

> that they need the bill, the schedule of collections, the deposit ticket, and the lease. So they will make that request to this facility for all those documents. And then [we] will query through the BISS, find that it's these 10 or 20 boxes, pull those out, search them, find them, either photocopy . . . [the documents or if the number of documents is large] pass the whole box on to the imaging/coding side of the house, and they'll image and code that document.

*Cobell* Trans. 384:12-385:12.

#### 2. Defendant's BISS Query

In order to develop the BISS results that Defendant delivered to Plaintiff, personnel at OHTA performed a "global" BISS search intended to identify all documents that may be related to the Round Valley Indian Tribe by searching for and identifying boxes at the AIRR that originated from or were created at a Government facility that housed documents potentially related to Round Valley. After running the search, OHTA then narrowed the date range of the search by running specific BISS queries based on Plaintiff's document requests.

Along with the DVD provided to Plaintiff containing the BISS search results, Defendant provided a letter explaining OHTA's steps in developing the searches and explaining particular search terms and field categories. Importantly, Defendant told Plaintiff that if Plaintiff had questions or concerns regarding the BISS results, representatives from the Government would be willing to meet with representatives, contractors, or consultants for Defendant to offer assistance in navigating the database. Moreover, Defendant offered to provide Plaintiff with telephone tutorials, and, if Plaintiff was still having difficulty navigating the Government's BISS DVD, Defendant offered to bring OHTA personnel to Plaintiff's or Plaintiff's consultant's offices for in-person tutorials.

### C. May 12 and 22, 2008, Status Conferences and Plaintiff's Motion

The parties discussed the progress of these discovery matters at telephone status conferences held on May 12 and 22, 2008, relating to the production of documents responsive to Plaintiff's

Document Production Requests that are stored at the AIRR. At the May 12, 2008, conference, Defendant reported that it would soon provide Plaintiff with the results of BISS queries conducted to identify documents responsive to Plaintiff's requests stored at the AIRR.[5] Plaintiff's counsel expressed misgivings about the anticipated BISS query results. The Court scheduled a further status conference on May 22, 2008, to discuss the BISS results after they were produced to Plaintiff.

At the May 22, 2008, status conference, Plaintiff's counsel stated the Tribe's position on the BISS query results that Defendant provided as follows:

> And so we at the law firm and also our contractors, **we with the technical people were kind of playing around with this a bit**. But then we had a few conversations, and the upshot is that yesterday **I said it doesn't make sense for us to keep playing around with this.** There are so many government codes and terms of art and pieces of information that the tribe does not have. **It makes the most sense for the government to run the most optimal searches it can do. You know, if they need to have more clarification on our requests for production, we're happy to give that to them.**
>
> But I'd have to say, Your Honor, and I don't have an answer back yet as to whether t]hey are willing to do that, but **I have to say that even if they do the most optimal searches, the Lenexa system is so disorganized and it's still such a mess that you end up with hundreds of thousands of documents that we have no idea if they even come close to being responsive to the requests.**

Transcript (TR), May 22, 2008, at 3:11-4:8 (bold emphasis supplied) (Ex. 1).

In response to Plaintiff's stated concern that the information provided on the DVD was too voluminous, Defendant noted that the volume of information provided was driven by the number of Plaintiff's discovery requests. TR at 8:12-23. Defendant also recounted its ongoing efforts and reiterated its standing offer to provide training and guidance to Plaintiff and its consultants on using

---

[5] The BISS results pertain only to documents stored at the AIRR. Documents responsive to Plaintiff's document requests that are stored at the Central California Agency office and the Pacific Regional office have been identified, and Defendant is in the process of scanning and coding those documents for production.

the BISS query responses to optimal advantage. TR at 9:3-16.

Following this exchange by the parties, the Court indicated an intent to hold a hearing to be attended by the individuals who run the BISS queries for the purpose of considering Plaintiff's discovery requests and examining how the BISS query system functions. TR at 10:1-18; 12:2-11. The Court instructed the parties to report back on available dates in June and July 2008 for the hearing. After an exchange of dates, the Court indicated that a hearing will commence on July 29, 2008, at 10:00 AM.

On May 30, 2008, Plaintiff filed a motion to schedule and clarify the nature of the hearing, and to establish a briefing schedule for motions to compel.

## II. ARGUMENT

Plaintiff's motion to schedule and define the scope of a hearing should be denied on the grounds that Plaintiff has failed to identify any issue of disputed fact that warrants a hearing, and as premature, in any event, because there is no motion to compel before the Court and no showing that Plaintiff has satisfied the preconditions for filing a motion to compel. Further, any discovery issues Plaintiff may ultimately bring before the Court on a motion to compel regarding the sufficiency of the BISS search results or other discovery issues can properly be decided on the record based on the parties' briefs and documentary evidence. For all the reasons stated herein, the Court should deny Plaintiff's motion and decline to hold a hearing.

### A. Plaintiff's Motion for a Hearing is Procedurally Defective.

Plaintiff seeks a hearing "to address the issues raised" in Plaintiff's unfiled motion to compel. It has not filed any such motion to compel under Rule 37(a)(2)(B) of the Rules of the Court of Federal Claims ("RCFC"), however, stating the basis for its claims or stating the basis for the relief

that Plaintiff seeks from this Court, *nor* has it met the prerequisites for filing such a motion. *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 530 (D.D.C. 2006) (denying motion to compel for failure to comply with "the requirement that a movant confer with opposing counsel in a good faith effort to resolve or narrow the dispute prior to filing a motion to compel."). Any motion to compel must be accompanied by "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action." *Id.* at 529 (citing Rule 37 (a)(2)(B) of the Federal Rules of Civil Procedure); *see also Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006) (requiring a "good faith effort" to resolve the parties' issues, without court intervention, before the court will reach the merits of plaintiffs' motion); *Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 699 (D.Kan.2000) (holding that "reasonable effort" to confer requires that counsel converse, confer, compare views, consult and deliberate).

Statements by Plaintiff's counsel at the May 22, 2008, status conference demonstrate that the "meet and confer" process is not complete, even from Plaintiff's perspective. Plaintiff's counsel has agreed to consider further information from Defendant that may dispel or minimize the concerns Plaintiff's counsel has expressed regarding the ease of using the BISS query results provided on May 19, 2008. *See* TR 3:11-4:8. Plaintiff's counsel stated at the May 22, 2008, conference that "[i]t makes the most sense for the government to run the most optimal searches it can do."[6/] TR at 3:21-22. Moreover, acknowledging Plaintiff's continuing role in the process of narrowing the Tribe's

---

[6/] As stated above, Defendant has engaged in and will continue to engage in efforts to refine and explain how the BISS search results provided to Plaintiff can be utilized. Defendant has already conducted two sessions with Plaintiff's counsel and other designees to explain how to utilize the BISS search results provided, and has stated that it will make the appropriate knowledgeable persons available at any agreed-upon time for further sessions by telephone or in person.

discovery requests and running additional BISS searches, Plaintiff's counsel stated at the May 22, 2008, status conference that "if they need to have more clarification on our requests for production, we're happy to give that to them." TR at 3:22-25.

Only after the parties have had a chance to meaningfully meet and confer as required by RCFC 37[7/] -- which would provide Defendant a chance to cure Plaintiff's articulated concerns -- could Plaintiff appropriately file a motion to compel the production of documents. At that point, the parties would have an opportunity to fully brief the issues presented (RCFC 7.2), to make a record on the issues before the Court and to seek oral argument. Even at that juncture, there is no need for an evidentiary hearing, unless the Court determines that the parties' submissions reveal disputed issues of material fact critical to the Court's ruling on Plaintiff's motion to compel.

**B. Plaintiff's Motion is Factually and Legally Baseless.**

Nor can Plaintiff cure the procedural defects merely by filing a motion to compel at this juncture. Plaintiff has not demonstrate a factual or legal basis for moving to compel. Plaintiff's current motion suggests that it would base a motion to compel on counsel's dissatisfaction with the BISS search results and counsel's perception that the working with the BISS query results may require some effort. Pl. Mtn; *see also* TR at 3:11-4:8. Plaintiff also cites to RCFC 26, 34 and 7.2.

---

[7/]While Plaintiff has stated counsel's misgivings about using the BISS query search results Defendant has provided, Plaintiff has yet to describe to Defendant precisely how the BISS query results fail to conform to RCFC 34, which allows for inspection of records as they are maintained in the ordinary course of business. Further, as referenced at the May 22, 2008 status conference, it is premature to conclude that the parties' have fully and fairly exhausted their efforts to meet and confer. *See* Tr. at 3 ("There are so many government codes and terms of art and pieces of information that the tribe does not have. It makes the most sense for the government to run the most optimal searches it can do. You know, if they need to have clarification on our requests for production, we're happy to give that to them."); TR at 8 ("[O]ne of the things that I said to the Department of Justice is we'll go with this system, but we've asked them if they will pay our contractor to go to the BISS[.]"); TR at 12 ("I have not gone to Lenexa yet because it just seemed like it wouldn't be worthwhile.").

Neither the facts nor the legal authority Plaintiff cites to support a motion to compel.

Defendant's response to Plaintiff's request for documents located at the AIRR conforms to RCFC 34. Parties served with document production requests are entitled to make such documents available for inspection as they are kept in the usual course of business. RCFC 34(b). Defendant is not only making the documents available for inspection by Plaintiff, it has provided a searchable DVD containing the BISS query results. *See, e.g.*, *In re Adelphia Comm. Corp.*, 338 B.R. 546, 553 (Bkrtcy. S.D.N.Y 2005) ("Rule 34(b) gives the producing party the option of labeling and organizing the documents *or giving the discovering party access in the usual course of business*") (emphasis added). Under RCFC 37(a)(2)(B), [i]f . . a party, in response to a request for inspection submitted under RCFC 34, *fails to respond that inspection will be permitted as requested or fails to permit inspection as requested*, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request." *Id.* (emphasis added).

Not only has Plaintiff failed to identify a basis for moving to compel, it has failed to identify any contested issue of material fact which would warrant an evidentiary hearing after the parties have fully briefed the issues and moved for oral argument, if appropriate.

The Court should therefore deny Plaintiff's motion for a hearing.

## III. Conclusion

Plaintiff's motion for a hearing on an unfiled motion to compel should be denied as procedurally defective and premature and as lacking a factual or legal basis under RCFC 34 or 37. Plaintiff's motion for a briefing schedule on a motion not yet before the Court and its motion to clarify the scope of a hearing it is requesting should likewise be denied. If and when Plaintiff files a motion to compel, Defendant requests that the parties have an opportunity to confer at that time

and attempt to agree upon briefing dates that comport with the scope of Plaintiff's motion and the issues raised in Plaintiff's motion.

Respectfully submitted this 11th day of June, 2008.

*s/ Carol L. Draper*
CAROL DRAPER
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0465
Fax: (202) 353-2021

Attorney of Record for Defendant

OF COUNSEL:
JASON BRUNO
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0434
Fax: (202) 353-2021

MICHAEL BIANCO
ELISABETH C. BRANDON
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240
TERESA DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20217